CHILDERS v. BROTHERHOOD OF R. TRAINMEN, KANSAS CITY TERMINAL RY. CO. et al.

No. 14342.

United States Court of Appeals
Eighth Circuit.

Dec. 21, 1951.

Rehearing Denied Jan. 24, 1952.

Robert L. Robertson and Fred J. Freel, Kansas City, Mo., for the appellant.

John Murphy, Kansas City, Mo. (J. Gordon Siddens and Tucker, Murphy, Wilson & Siddens, all of Kansas City, Mo., on the brief), for appellee, Brotherhood of R. Trainmen.

Horace F. Blackwell, Jr., Kansas City, Mo. (John H. Lathrop and Sam D. Parker, Kansas City, Mo., on the brief), for appellees, Kansas City Terminal R. Co. and Atchison, Topeka & Santa Fe R. Co.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from an order of the district court denying plaintiff's motion for a preliminary injunction.

The proceeding involves a dispute between two local unions of the Brotherhood of Railroad Trainmen over switching work on the property of the Kansas City Terminal Railway Company in Kansas City, Missouri The Brotherhood is an unincorporated association operating as a national railroad labor union.

The complaint was filed July 1, 1950, for a declaratory judgment, praying that the court declare and adjudge that the yardmen employed by the Terminal have the exclusive right to perform all switching work upon Terminal property and that a decision of the Grand Lodge officers to the contrary is illegal, and that the Terminal be restrained from allowing Santa Fe yardmen to perform any of such work.

On November 20, 1950, the Terminal, the Atchison, Topeka and Santa Fe Railway Company, hereinafter called the Santa Fe, and the Brotherhood entered into an agreement to become effective December 1, 1950, known in the record as the 2.4 agreement, which gave to the Santa Fe yardmen 2.4 of such switching.

A supplemental complaint, in which the Santa Fe was joined as a party defendant, was then filed on November 22, 1950, praying for an injunction prohibiting the defendants from placing the 2.4 agreement into effect on December 1, 1950.

On November 27, 1950, plaintiff filed a motion for a preliminary injunction enjoining the defendants, pending a final hearing and determination of the action from permitting employees of the Santa Fe to perform work on the Terminal Yards in Kansas City, Missouri. This motion was denied by the district court, and it is from that order this appeal was taken.

Jurisdiction was invoked under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and also on the ground of diversity of citizenship. The latter ground is abandoned on this appeal.

The evidentiary facts involved in the contentions of the parties are not in dispute; only the inferences to be drawn from the facts and the application of the law thereto must be determined on this appeal.

In 1909 the Kansas City Terminal Railway Company entered into contracts with its tenant railroads to provide certain terminal services including servicing and repairing their passenger cars. The Santa Fe did not then exercise its right to transfer to the Terminal the work of servicing and repairing its passenger cars. At that time it maintained a yard in Kansas City, Kansas, referred to as the Argentine yard, where its employees performed such services for it.

The employees of the two railroad companies performing such services are referred to as yardmen. They include, foremen, pilots, helpers, and switchtenders. The Terminal yardmen are members of Triangle Lodge 732 and the Santa Fe yardmen are members of Lodge 256, both of which are members of the Brotherhood of Rail-

road Trainmen. On December 3, 1932, an agreement including rules, regulations and rates of pay of Terminal yardmen was entered into between the Terminal Company and the Brotherhood of Railroad Trainmen applicable to the yardmen of the Terminal. The Santa Fe had a similar agreement with its yardmen.

In December, 1947, the Santa Fe decided to exercise its right to transfer to the Terminal the yard work which prior to that time had been performed in its own facilities at its yard in Kansas City, Kansas.

On December 1, 1947, the General Manager of the Santa Fe and the Superintendent of the Terminal Company addressed a joint letter to the appropriate officers of both Lodges 732 and 256 informing them of the contemplated move and inviting them to a conference on December 29th, and saying " * * * in the interest of friendly cooperation, we are desirous of discussing this move with you in detail so that you will be fully acquainted with the facts, and in order that we may seek a mutual agreement as to an equitable disposition of the employees who will be affected thereby."

On December 29, 1947, an officer of Lodge 732 addressed an answer to the General Manager of the Santa Fe and the Superintendent of the Terminal in reply to their letter of December 1st, in which he said: "This letter is our official reply to your letter of December 1, 1947, and will also notify you that the members of our organization have unanimously voted to oppose any plan whereby Santa Fe employes will be transferred to the Kansas City Terminal Railway with the seniority they have acquired while employed on the Santa Fe Railroad or whereby Santa Fe employes will be permitted to perform any switching service on the Kansas City Terminal facilities."

The Santa Fe employees and Terminal employees each took the position that the work was theirs under their agreements. Conferences between committees of the two railroads and their employees were unable to settle the dispute between the two lodges, 732 and 256, with the result that the assistance of a Grand Lodge officer of the Brotherhood was requested. President Whitney of the Grand Lodge assigned Vice-President E. B. Boggs to investigate the dispute and to settle it or make recommendations to the President. Boggs made an investigation of the yard operations and the records of the Terminal but was unable to get the committees to agree. Accordingly he reported his findings and conclusions to President Whitney who embodied the Boggs report in a decision on May 27, 1949. He found that the controversy should be settled on the basis of assigning 2.4 Santa Fe engine and switch crews daily to Terminal passenger service, and he ordered the general chairman of the Terminal and Santa Fe lodges to meet and place the decision in effect. Instead of obeying this order the general chairman and the secretary of local 732 of the Terminal employees appealed to the Brotherhood Board of Appeals. The order was affirmed in October 1949.

No further official action was taken until this suit was commenced July 1, 1950. In the meantime the work had been transferred on March 1, 1948, and Terminal employees were doing all of the additional work contrary to President Whitney's decision of May 27, 1949, which decision had been affirmed on appeal by the Brotherhood Board of Appeals.

We are concerned here only with the question whether the court erred in denying the plaintiff's motion for a preliminary injunction. The question whether the complaint for a declaratory judgment and an injunction presents a justiciable controversy under the Railway Labor Act is not before us except as it may incidentally affect the alleged right to a preliminary injunction. The defendant, the Brotherhood of Railroad Trainmen, filed a motion to dismiss the complaint on the ground, among others, that the court is without jurisdiction over the subject-matter of the action for the reason that the controversies, if any, are not justiciable in the federal courts, but if at all only before the tribunals created by the provisions of the Railway Labor Act. This motion has not been presented to or ruled upon by the trial court.

In this court the plaintiff contends that he is entitled to the injunctive relief demanded and that the trial court erred in finding and· holding as a basis for the denial of such relief (1) that Triangle Lodge 732 was not the collective bargaining representative of the Terminal yardmen, and (2)·that President Whitney was without authority under the constitution of the Brotherhood of Railroad Trainmen to authorize Vice-President Boggs to modify the bargaining agreement with the Terminal over the protest of the General Committee of Lodge 732, and that the President could not thereby waive the right of the members of Lodge 732 to the 30-day notice required by the Railway Labor Act, 45 U.S.C.A. § 156.

█ Plaintiff's first contention, namely, that Triangle Lodge 732 is the authorized and designated bargaining representative under the constitution of the Brotherhood of Railroad Trainmen is without merit.

In the first sentence of his Argument plaintiff says: "It is admitted that the Brotherhood of Railroad Trainmen is the designated collective bargaining representative under the Railway Labor Act for the Terminal yardmen, who constitute a class of employees under the provisions of the Act." But he contends that under the constitution of the Brotherhood the collective bargaining power of the Brotherhood is lodged in the General Committees formed by a subordinate lodge. The argument in support of this contention was rejected by the trial court. It held that the national organization, not the local lodge, is the collective bargaining representative within the meaning of the Railway Labor Act, as well as within the meaning of the constitution of the Brotherhood.

Section 6 of the constitution provides that "The Grand Lodge has exclusive jurisdiction over all subjects pertaining to the Brotherhood, and its enactments and decisions upon all questions are the supreme law of the Brotherhood."

Section 9, Duties of President, provides: " * * * If occasion requires, he shall have power to appoint Deputy Grand Lodge officers to represent the Brotherhood. He shall be empowered to adjust all grievances

referred to him in conformity with the general.rules; he shall interpret all laws pertaining to the Brotherhood and shall decide all controversies and appeals referred to him by subordinate lodges or members thereof. Such decisions shall be final unless reversed by the Board of Directors or by the Board of Appeals * * *."

Section 15½ provides that when an appeal is taken from a decision of the President the decision of the Board of Appeals "shall be the final adjudication of any and all rights and questions included in the appeal."

Section 92 provides that the jurisdiction of the local lodge " * * * shall be that assigned to it by the President of the Brotherhood of Railroad Trainmen."

Not only was the 2.4 decision of the President made and entered into under the authority of the Constitution, but it conformed to paragraph G of the "Declaration of Policy of the Brotherhood of Railroad Trainmen in relation to seniority rights of train and yardmen on lines of· railway or portions thereof where mergers are made effective", which paragraph reads: "In the merging of yard work operation by two or more railways, yardmen should be assigned to the merged work on the basis of yard engine hours worked by the respective lines for a consistent period or periods prior to merger, and should, for future assignment or promotion in the merged service, be placed on a merged roster with the seniority dates they held on their original yard."

█ Neither is there merit in the contention that the court erred in finding and holding that it was not necessary for the Terminal to give Lodge 732 the 30-day notice required by § 6 of the Railway Labor Act, 45 U.S.C.A. § 156, and by the contract of December 3, 1932. The letter of December 1, 1947, to the general chairman of all crafts involved was accepted at the time as notice by all parties concerned, and from that time until the 2.4 contract was consummated on November 20, 1950, the lodge was represented on committees and appeared at hearings without complaining of any insufficiency of the notice. The court did not err in holding that any technical deficiency in the notice was waived.

 Further, the court correctly held that the 30-day notice provided for in the statute does not apply to the facts in this case, since it is conceded that the Brotherhood of Railroad Trainmen is the collective bargaining agent for the employees of the Terminal Railway Company, and not Lodge 732. The fact that negotiations are carried on through committees neither modifies nor changes that basic fact. And this finding of the district court is confirmed by the decision of the Supreme Court in General Committee v. Missouri-K.-T. R Co., 320 U.S. 323, 64 S.Ct. 146, 152, 88 L.Ed. 76, wherein the Court say: "In view of the pattern of this legislation [Railroad Labor Act] and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. There may be as a result many areas in this field where neither the administrative nor the judicial function can be utilized. * * * Courts should not rush in where Congress has not chosen to tread."

Finally, the Court in arriving at the decision complained of relied in large measure upon the decision of this court in Division 525, Order of Railway Conductors of America v. Gorman, 8 Cir., 133 F.2d 273, 278, in which an injunction was sought to restrain the defendants from violating the terms of a contract securing to the plaintiff conductors certain priority rights. The defense was that the contract had been cancelled. The reply was that the purported cancellation was null and void. The final contract in issue rescinding the original contract was entered into in reliance upon a decision of the President of the Order of Railway Conductors of America pursuant to the procedure prescribed by the laws of the Order. In affirming the decision of the trial court in sustaining the latter contract this court said: "It appears without dispute that the defendants have dealt with the representative of the Order in effecting the collectively bargained agreements, and they cannot be required to examine into the specific authority granted the representative of the Order. Under the laws of the Order the decision of the President on appeal was binding, it was apparently made in good faith, and courts will not ordinarily interfere with the decisions * * * of a voluntary unincorporated labor organization. The court cannot substitute its judgment for that of the President of the Order." Citing authorities.

 So it is in the present case. The decision of President Whitney affirmed on appeal by the Board of Appeals was no doubt made in good faith, and the proceedings were all in accordance with the Constitution of the Brotherhood of Railroad Trainmen. That decision is controlling here; and the trial court did not err in applying it.

Affirmed.