WESTCHESTER LODGE 2186, BROTHERHOOD OF RAILWAY & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYES, AFL–CIO, Plaintiff,

v.

RAILWAY EXPRESS AGENCY, INCORPORATED, Defendant.

Civ. 531.

United States District Court
S. D. New York.
May 16, 1963.

188

I. Philip Sipser, New York City, for plaintiff; Belle S. Harper, New York City, of counsel.

Robert E. Johnson, New York City, for defendant.

WYATT, District Judge.

Defendant moves with supporting affidavits under Fed.R.Civ.P. 12 to dismiss the action (a) because the complaint fails to state a claim against defendant upon which relief can be granted and (b) because there is a lack of jurisdiction over the subject matter. In the alternative defendant moves with the same supporting affidavits under Fed.R.Civ.P. 56 for a summary judgment in its favor.

The motion for a summary judgment in favor of defendant is granted because there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law.

The complaint contains two counts; the governing facts and law will be considered under each count separately.

### The First Count

This is to enjoin alleged violations by defendant of the Railway Labor Act (45

U.S.C.A. § 151 and following). Plaintiff asserts that defendant, in violation of the Act, is modifying or changing rules or working conditions contained in a collective agreement.

Plaintiff is a local labor organization affiliated with a national labor organization, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes. The Brotherhood executed (on behalf of the employees) a collective agreement dated and effective September 1, 1949 which is still in effect and continues until changed as therein provided, "or under the provisions of the amended Railway Labor Act". The defendant Railway Express Agency, Inc., a corporation is the employer party to such agreement. The agreement, according to its title, governs "hours of service and working conditions".

Plaintiff alleges that it represents the employees of defendant at Ardsley Terminal in Westchester County. The place and standing of plaintiff as any such representative is not clear. The complaint contains averments about the duty of plaintiff "as representative of the Ardsley employees under the Railway Labor Act", about its "statutory responsibilities as representative of the employees under the 45 U.S.C.A. Sec. 152", and about action by defendant to "influence the employees in the choice and designation of their collective bargaining representative".

As already noted, however, the agreement on which this action is based was executed for the employees by the Brotherhood. While plaintiff may be a subdivision or affiliate of the Brotherhood, it appears from the papers submitted that the Brotherhood and not the plaintiff is the "representative of the craft or class" for purposes of the Railway Labor Act (45 U.S.C.A. § 152, Fourth). See Ferro v. Railway Express Agency, Inc., 296 F.2d 847, at 850 (2d Cir., 1961), where the same collective bargaining agreement was under discussion.

The agreement provides, among other things, for the establishment of "seniority districts" (Rule 3; the provisions of the agreement are designated as "Rules"). It appears that defendant's New Haven Express Terminal (located on the New Haven Railroad in the Bronx) was in one such seniority district, its Ardsley Terminal in another. It is said for plaintiff that the employees in these separate seniority districts "are represented by different Lodges of the Brotherhood" (Complaint, par. 6).

The New Haven Terminal was closed on January 14, 1963; the work and employees of the closed terminal were transferred by defendant to its Ardsley, Hoboken and Pennsylvania Station (New York) Terminals. Of the employees at the closed New Haven Terminal, 28 "active" employees and 27 "inactive" employees were transferred by defendant to the Ardsley Terminal. It is this transfer to Ardsley and the subsequent seniority status given to the transferred employees which caused the present controversy.

Rule 22 of the agreement provides in relevant part as follows:

"Positions or work involving a position may be transferred from one seniority district to another after conference and agreement between the management and the duly accredited representatives of the employes. Employes may follow their positions or work when same is transferred from one seniority district to another."

Rule 23 of the agreement is as follows:

"When for any reason two or more offices or departments are consolidated, employes affected shall have prior rights to corresponding positions in the consolidated office or department. After such rights have been exercised these rules will govern."

Plaintiff claims that the transfers to Ardsley were without its consent or the consent of the Brotherhood and that Rule 22 and other Rules were violated by such transfers and also by the seniority given at Ardsley to those transferred there.

Defendant makes as a principal contention that if Rule 22 is applicable, there was in fact an agreement by the Brotherhood to the transfers and that, in any event, what was done amounted to a consolidation and could be effected under Rule 23 without any agreement thereto by the Brotherhood

The agreement of the Brotherhood to the transfers is claimed by defendant to have been oral and to have been reached on December 26, 1963. On that date there was a meeting between defendant and the Brotherhood, for the purpose (known in advance) of considering proposals by defendant for adjustments and transfers in connection with closing the New Haven Terminal. Defendant was represented by Goodson. The Brotherhood was represented by Sullivan (General Chairman with jurisdiction over employees in the area containing the New Haven, Pennsylvania Station and Hoboken Terminals), Osborne (General Chairman with jurisdiction over employees in the area containing the Ardsley Terminal), Dolan (assistant to Sullivan), Williamson (local chairman at the New Haven Terminal), Fundunic (local chairman at Pennsylvania Station Terminal), and McCaig (local chairman at the Hoboken Terminal). It will be observed that Keppler, who is president of plaintiff Lodge for Ardsley Terminal and presumably the "opposite number" of the local chairmen at the other terminals, was not present at the December 26 meeting. The Brotherhood itself must have determined who should be its representatives at the meeting.

Goodson says in his affidavit that at the December 26 meeting "it was decided by representatives of the Brotherhood that the proposal advanced by Railway Express would produce the most equitable result and it was agreed that it would be followed." He also says that "it was agreed by all parties present that this would be done and the Brotherhood accepted the proposal".

Osborne says in his affidavit that *he* did not agree to defendant's proposal and "hence no agreement was ever arrived at". Osborne seems carefully to avoid saying whether the other representatives of the Brotherhood agreed or not. No affidavits were submitted from anybody at the meeting except Goodson and Osborne.

On December 28, 1962 the Grand Vice-President of the Brotherhood, without taking any position as to whether there had been an agreement or not (and as to which he could have had no personal knowledge since he was not at the meeting), asked defendant to delay closing the New Haven Terminal for 3 or 4 months so that Osborne and Sullivan could "wrestle with the problem and reach a conclusion".

Defendant did not delay but closed the New Haven Terminal on January 14, 1963.

When employees were then transferred to Ardsley, they were given a seniority status based on the commencement of their employment at the New Haven Terminal and not on the date of their transfer; in other words, they took their seniority with them.

The result was that 15 employees who had been working at Ardsley before the transfers were laid off, 8 such employees were transferred to lower positions, and other upheavals may have occurred. Naturally this led to discontent in the plaintiff Lodge and out of this discontent came the commencement of this action.

It may very well be that some of the Ardsley employees have grounds for complaint. There are indications that defendant may have been arbitrary in refusing to delay the closing of the New Haven Terminal, and also that within the Brotherhood there may not have been a sufficient appreciation of the hurt to some of the Ardsley employees.

Be that as it may, an action in this Court appears to be the wrong avenue toward relief. The only place where jurisdiction exists to pass on the claims asserted in the first count is the National Railroad Adjustment Board (45 U.S.C.A. § 153).

These claims are based on rights arising under the collective agreement; all such claims are clearly within the primary jurisdiction of the Adjustment Board. Ferro v. Railway Express Agency, Inc., above, 296 F.2d at page 851. The dispute concerning these claims is one "growing out of * * * the interpretation or application" of the agreement (45 U.S.C.A. § 153, First, (i)) and is *exclusively* a matter for the Adjustment Board. Slocum v. Delaware L. & W. Ry. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950).

The basic complaint of the Lodge is that the transfers to Ardsley were without agreement of the Brotherhood and thus in violation of Rule 22 of the written collective agreement.

The affidavits raise no issue of fact as to whether the representatives of the Brotherhood, other than Osborne, agreed to the transfers to Ardsley. There is no denial by anyone at the December 26 meeting of Goodson's sworn statement that there was such agreement.

The issue of fact as to whether Osborne himself agreed does not prevent summary judgment because if it be assumed that Osborne did *not* agree, the issue remains whether agreement by the others amounted to agreement by the "duly accredited representatives of the employees" (Rule 22). That term is defined in Rule 84. To decide who are the "duly accredited representatives of the employees" under the written collective agreement would certainly seem to require the "interpretation or application" of that agreement.

But even if it be assumed that there was *no* agreement to the transfers by the "duly accredited representatives of the employees", defendant says that Rule 23 is applicable, that there was a "consolidation" and that no agreement was necessary. Plaintiff would deny these propositions. To resolve this dispute would again seem to require "interpretation or application" of the written collective agreement.

Other questions raised by the complaint and by the moving papers are whether under Rule 92 defendant should have appealed the matter to the "Express Board of Adjustment" and whether the seniority given to the transferred employees was in violation of Rules 3 and 19. These also seem to involve the "interpretation or application" of the written collective agreement.

The argument for plaintiff is that the issues here do not involve the "interpretation or application of agreements concerning rates of pay, rules, or working conditions" under Section 3, First, (i), of the Railway Labor Act (45 U.S.C.A. § 153, First, (i)). Plaintiff appears to concede that if they did, the Adjustment Board would have jurisdiction to the exclusion of this Court.

Plaintiff contends that defendant, by its transfer of the employees to Ardsley, changed the "rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements" in violation of Section 2, Seventh of the Act (45 U.S.C.A. § 152, Seventh), that is, without following the notice and bargaining provisions of Section 6 of the Act (45 U.S.C.A. § 156).

This argument is often phrased in terms of whether the dispute is "major" or "minor", the Adjustment Board having exclusive jurisdiction of all "minor" disputes. The terms "major" and "minor" seem to have been first given judicial recognition in Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

A major dispute is one

"over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." (325 U.S. at 723, 65 S.Ct. at 1290)

In such major disputes the District Courts have jurisdiction under the Railway Labor Act to issue injunctions on a proper showing. Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

A minor dispute is one where there is in existence

"a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e. g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future." (325 U.S. at 723, 65 S.Ct. at 1290)

In such minor disputes, the Adjustment Board has exclusive jurisdiction. Slocum v. Delaware, L. & W. Ry. Co., above.

■ It must be apparent at once that under the foregoing test what is here involved is a minor dispute.

Plaintiff cites cases to show that the dispute here is major, but these authorities are miles away. For example, in Railroad Yardmasters of America v. Pennsylvania Ry. Co., 224 F.2d 226 (3d Cir. 1955) a new collective agreement was negotiated but the union president refused to sign it. The railroad threatened to put the new agreement into effect nevertheless. Obviously whether a collective agreement has in fact been reached is not the same thing as "interpretation or application" of an admittedly existing collective agreement. Again, in Brother of Locomotive Firemen and Enginemen v. Southern Ry. Co., 212 F.Supp. 465 (D.C.1963), where a preliminary injunction was in fact refused, a dispute was classified as major because the railroad was proposing to change one of the provisions of the agreement and in fact had made the appropriate filing under Section 6 of the Act (45 U.S.C.A. § 156).

Here to the contrary the rights which plaintiff asserts are all based on an existing collective agreement. Defendant has not changed, or attempted to change, any of the terms of that agreement; it has not changed any "rules, or working conditions of its employees, *as a class*" (45 U.S.C.A. § 152, Seventh; emphasis supplied). On the contrary it has purported to act under the agreement "with reference to a specific situation" (325 U.S. at 723, 65 S.Ct. at 1290), namely, the transfers of employees to Ardsley.

This Court has no jurisdiction of the claims asserted in the first count; exclusive jurisdiction is vested in the National Railway Adjustment Board.

*The Second Count*

This is for money damages caused by defendant "wilfully rejecting and breaching its contract" (complaint, par. 35), but it also charges defendant with a scheme "to interfere with, coerce and influence the employees in the choice and designation of their collective bargaining representative" in violation of the Act and asserts that the conduct of defendant "unless restrained would destroy the Lodge" (complaint, pars. 27, 28).

To the extent that the claims in the second count are based on alleged breaches by defendant of the written collective agreement, this Court is without jurisdiction for the same reasons applicable to the first count.

To the extent that the claims in the second count are based on alleged violations of the Act by interference, coercion or influence with respect to the choice by employees of a collective bargaining representative, this Court does have jurisdiction. An example of the exercise of such jurisdiction is Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 305 F.2d 605 (5th Cir. 1963), cited for plaintiff.

In the case at bar, the undisputed facts show not only that defendant has done

nothing whatever affecting the choice of a collective bargaining representative, but also that such representative is not here complaining and is not a party to this action.

 Plaintiff Lodge is mistaken in asserting, as it does in the second count, that it has "statutory responsibilities as representative of the employees under the 45 U.S.C.A. Sec. 152" (complaint, par. 28). The representative of the employees, including those at Ardsley Terminal, is the Brotherhood; the collective agreement is with the Brotherhood.

What appears to have happened is that a difference of viewpoint developed between some of the subdivisions of the Brotherhood, including plaintiff Lodge. There are internal procedures in the Brotherhood for resolving such differences; plaintiff Lodge was not without an opportunity for remedy.

The second count does not allege any claim for "hostile discrimination" such as was involved in Ferro v. Railway Express Agency, Inc., above, and in Long Island City Lodge 2147 etc. v. Railway Express Agency Inc., et al., 217 F.Supp. 907 (S.D.N.Y.1963), cited for plaintiff.

There is some suggestion, however, in a reply affidavit for plaintiff that defendant discriminated against the Ardsley Terminal in order to favor other units of the Brotherhood which were stronger than plaintiff. It may not be amiss to point out, therefore, that in Ferro the complaint of "hostile discrimination" was sustained as a pleading against the Brotherhood, its officers and agents, because as "statutory bargaining agent of the employees" they "were under a duty to represent these employees fairly" (296 F.2d at 850). The complaint was not sustained as against the employer who is obviously not under any such duty.

It should also be pointed out that in the Long Island City Lodge case, above, the defendants included individual officers of the Brotherhood, who had duties as statutory bargaining representatives. The complaint was dismissed as against the Brotherhood officers because plaintiff had not exhausted the remedies within the Brotherhood; leave was given to amend to plead futility of any such efforts. The complaint was let stand against the employer apparently because of the averments of complicity in the discrimination charged against the Brotherhood officials.

 Finding that all the claims in the first count and certain of the claims in the second count are outside the jurisdiction of this Court, finding that all other claims in the second count are without merit, finding that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law, the motion for summary judgment is granted and the Clerk is directed to enter judgment hereon in favor of defendant.

So ordered.