Washington **NEAL** et al., Appellants,

v.

**SYSTEM BOARD OF ADJUSTMENT (MISSOURI PACIFIC RAILROAD) et al., Appellees.**

**No. 17728.**

United States Court of Appeals
Eighth Circuit.
July 21, 1965.

Wilson Gray, St. Louis, Mo., for appellants.

Robert W. Yost, St. Louis, Mo., for appellee, Missouri Pac. R. Co.

Edward J. Hickey, Jr., Washington, D. C., for all appellees other than Missouri Pac. R. Co.

M. M. Hennelly and Robert W. Yost, St. Louis, Mo., Edward J. Hickey, Jr., James L. Highsaw, Jr., of Mulholland, Hickey & Lyman, Washington, D. C., Carroll J. Donohue, Stephen W. Skrainka, of Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., were on joint brief for appellees.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

Judge Regan has entered summary judgment for the defendants in this proceeding by which seven Negro plaintiffs, alleging racial discrimination, seek injunctive relief and damages for claimed violations of the Railway Labor Act, as amended, 45 U.S.C. §§ 151–163.

The plaintiffs are employees of the Missouri Pacific Railroad Company in the Saint Louis Terminal. They and other employees are persons for whom the

Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes is the designated representative, within the definition of § 1 Sixth of the Act, 45 U.S.C. § 151 Sixth. The Brotherhood is an unincorporated association with headquarters at Cincinnati. It and the Missouri Pacific have negotiated a collective bargaining agreement which groups freight warehouse employees into Classes A, B and C, consisting, respectively, of clerks, messengers, and laborers. It also contains seniority provisions.

In 1962 the Missouri Pacific began the installation of an electronically controlled conveyor system at the Miller Street freight house in Saint Louis. The System Board of Adjustment (Missouri Pacific Railroad), which is a committee of the Brotherhood formed under the union's Protective Laws to represent employees of the Missouri Pacific, in November 1962 served on the railroad notice under § 6 of the Act, 45 U.S.C. § 156, of a desire to enter into an agreement defining the rights of employees affected by the installation of the conveyor system. In due course a Supplemental Agreement, dated April 17, 1963, was executed. This provides,

> "It is agreed that when the Carrier desires to establish positions of 'Checker-Stowman' which will result in the abolishment of warehouse laborer positions, notice will be given the General Chairman and conference arranged to work out details regarding promotion of 'Class C' employes to the 'Class A' roster.

> "The positions of 'Checker-Stowman', when established, shall be considered 'Class A' positions and will be paid the prevailing Check-Clerk rate of pay."

The plaintiffs' original petition presumed the status of a class action and named as defendants the System Board, two of its officers, the Brotherhood, three officers of it, and the railroad. It alleged, among other things, that: (a) The clerks of Class A and the messengers of Class B were white and the laborers of Class C were Negro. (b) The Brotherhood, through the System Board, maintained two locals, Nos. 280 and 1740, in the bargaining unit. The former was 97% white; the latter was all Negro. The plaintiffs were members of No. 1740. (c) The conveyor system, when complete and operative, would cause the abolition of most of the Class A and Class B positions but would not affect the Class C positions. (d) The System Board, with the advice and consent of the Brotherhood, set up a plan by which the Class A and Class B employees would be reclassified under a new Class A roster of checker-stowmen who would do the work now being done by Class C employees. This would result in the displacement of the plaintiffs and other Class C employees and the loss of seniority rights. (e) The System Board, solely because of race, did nothing to protect the Negro Class C employees. This constituted a violation of the plaintiffs' rights under the Act. (f) All three classes should be dovetailed on the new Class A roster. (g) The railroad, by agreeing to the plan, was also refusing to recognize the rights of the plaintiffs and other Class C employees.

The relief requested included an injunction against placing the agreement of April 1963 into effect, and requiring its appropriate modification, and actual and punitive damages.

The following events then took place:

1. In September 1963 the district court quashed Ohio service upon the Brotherhood and two of its officers, and also dismissed the action as to those three defendants and as to the third officer on grounds of improper venue.

2. In November the court entered its order dismissing the case as to the railroad and as to the System Board and its two officers for failure to join indispensable parties and for failure to allege exhaustion of administrative, contractual and union remedies, "unless plaintiffs amend within ten days so as to cure these defects". In its accompanying memorandum the court upheld its general ju-

risdiction "over a claim of hostile discrimination" and concluded that the petition, although not too clear, stated a claim against the railroad. But it also held that the Brotherhood was an indispensable party; that, although the System Board did not have capacity to be sued, its membership and officers might constitute representatives of a class which includes the Brotherhood; that process upon it as a representative might then be notice to the whole class; that some employees who were members of the locals would benefit or be bound by a decree; that those members of No. 280 who might be adversely affected by it were indispensable parties; and that exhaustion of contractual and internal remedies was a prerequisite to equitable relief in federal court.

3. In December the plaintiffs filed their amended petition. This named as additional defendants three other officers of the System Board, the two local Lodges, and eight individuals as officers of the locals. It did not name the Brotherhood as such, although it named the Grand Lodge and the same three national officers. It alleged, among other things, that the several System Boards had the duty to negotiate working conditions and other employment relations; that the individual defendants were made parties individually and as representatives of the "International and Local Lodges", the System Board, and the entire membership of each of them; that since the suit was instituted the two locals have consolidated; that it was impractical to make the entire membership of the Brotherhood, of the System Board, and of the locals parties to the action; that the individual plaintiffs and defendants were appropriate representatives of all; that there was no administrative remedy available because the National Railroad Adjustment Board did not have jurisdiction and could not determine the rights of the parties; that under the supplemental agreement of April 1963 the new Class A checker-stowmen positions would be filled by former Class A clerks and Class B messengers ahead of all Class C employees, regardless of seniority possessed by the latter; that this was hostile, prejudiced, and discriminatory toward the plaintiffs and other Class C employees similarly situated; that the railroad, when joining in the supplemental agreement, was aware of this discrimination; and that the acts of the Brotherhood, its officers, and the System Board were willful and injurious to the plaintiffs and others similarly situated.

4. Motions by the System Board and two of its officers, by the officers of the locals, and by the railroad for summary judgment were then made and sustained by the court.

We thus have a situation where the trial court granted the plaintiffs an opportunity to remedy what it felt were the deficiencies in their petition as to persons and allegations, and where it concluded that those defects were not remedied by the amended petition.

A. *The availability of internal union and contractual remedies and the necessity of their exhaustion.* The plaintiffs' argument, as we understand it, is that an employees' representative under the Railway Labor Act is obliged to represent all in the bargaining unit fairly and without discrimination; that the courts have power to protect employees against any such discrimination; and that in racial cases of this kind the usual rule that internal or contractual remedies must first be exhausted has no application.

1. The union and its officers. It is of course long settled that a designated representative under the Railway Labor Act has the duty to represent all employees of a class without discrimination as to race, and that the courts have jurisdiction to protect a minority from a violation of that obligation. Steele v. Louisville & N. R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Haley v. Childers, 314 F.2d 610, 616 (8 Cir. 1963). See Humphrey v. Moore, 375

U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). This principle of itself, however, does not render the plaintiffs' amended petition here immune from fatal attack.

There is no dispute that plaintiffs are members of the Brotherhood and that remedies within the union are provided. There are carefully delineated grievance procedures in the Protective Laws with appeals allowed ultimately as high as the Grand Executive Council. And Article 5 of the Constitution provides,[1] as plaintiffs concede, that it is the obligation and responsibility of every member to comply with the Constitution and that no member shall resort to the courts until he "first shall have exhausted all remedies by appeal or otherwise provided herein". Each plaintiff, by becoming a member of the Brotherhood, necessarily made himself a party to that obligation and established a contractual relationship with the union. Hall v. Morrin, 293 S.W. 435, 439 (Mo.App.1927); Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374, 387 (1940); Junkins v. Local 6313, Communication Workers, 241 Mo.App. 1029, 271 S.W.2d 71, 76 (1954); Farrar v. Messmer, 368 S.W.2d 933, 936 (Mo. App.1963); Greater Kansas City Laborers Dist. Council, etc., v. Builders' Ass'n., 383 S.W.2d 293, 295 (Mo.App.1964); Local 1104, United Elec. Workers, etc., v. Wagner Elec. Corp., 109 F.Supp. 675, 677 (E.D.Mo.1951). See International Ass'n. of Machinists v. Gonzales, 356 U.S. 617, 618, 8 S.Ct. 923, 2 L.Ed.2d 1018 (1958).

The existence of these internal remedies in this very Brotherhood has already been judicially recognized. Gainey v. Brotherhood of Railway Clerks, 177 F. Supp. 421, 427, 431 (E.D.Pa.1959), aff'd, 275 F.2d 342 (3 Cir. 1960), cert. denied

363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153; Fagan v. Pennsylvania R. R., 173 F.Supp. 465, 474 (M.D.Pa.1959); Martin v. Kansas City So. Ry., 197 F.Supp. 188, 192–93 (W.D.La.1961); Long Island City Lodge 2147, etc., v. Railway Express Agency, 217 F.Supp. 907, 909 (S.D. N.Y.1963).

■ With these internal remedies so definitely available, resort to them, or an adequate reason for failure so to do, is a prerequisite to equitable relief against the union or its officers in the federal courts. Tunstall v. Brotherhood of Locomotive Firemen, supra, pp. 213–14 of 323 U.S., 65 S.Ct. 235; Fingar v. Seaboard Air Line R. R., 277 F.2d 698, 700–01 (5 Cir. 1960); Gainey v. Brotherhood of Railway Clerks, supra, 275 F.2d 342, 345 (3 Cir. 1960); Long Island City Lodge 2147, etc., v. Railway Express Agency, supra, 217 F.Supp. 907, 909–10 (S.D. N.Y.1963); Martin v. Kansas City So. Ry., supra, pp. 191–93 of 197 F.Supp.

The plaintiffs would draw an exception to this rule for cases of racial discrimination. See our comments in Haley v. Childers, supra, p. 617 of 314 F.2d. But the six cases they cite support no such exception and we are not inclined to create and engraft one on established labor law. Three of the cases cited by the plaintiffs were brought by petitioners who were not then members of the union and thus had no internal union procedures available to them. Steele v. Louisville & N. R. R., supra, pp. 194 and 199 of 323 U.S., 65 S.Ct. 226; Tunstall v. Brotherhood of Locomotive Firemen, supra (see the Fourth Circuit's opinions at 140 F.2d 35, 36 and 163 F.2d 289, 291); Richardson v. Texas & N. O. R. R., 242 F.2d 230, 231 (5 Cir. 1957). The same is to be said of the fourth case, Brother-

---

[1]. Art. 5, § 2(c), of the Constitution of the Brotherhood reads in full as follows:

"(c) No officer, member or subordinate unit of this Brotherhood may resort to any Court of Law or Equity or other civil authority either as parties plaintiff or for the purpose of securing an opinion or decision in connection with any alleged grievance or wrong concern-

ing any case in controversy arising within the organization or under its law, until such officer, member or subordinate unit first shall have exhausted all remedies by appeal or otherwise provided herein, not inconsistent with applicable law, for the settlement and disposition of such alleged rights, grievances or wrongs."

hood of R. R. Trainmen v. Howard, 343 U.S. 768, 773, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952), although there the Negro plaintiffs were represented by another union of their own selection. All four of these cases then pivoted on the unavailability of remedy under the Railway Labor Act itself. The posture of the Act in this respect is not, of course, the issue here. See Haley v. Childers, supra, pp. 614–15 of 314 F.2d.

One perhaps might argue that certain language in the fifth case, Conley v. Gibson, supra, 355 U.S. 41, 78 S.Ct. 99, may be read in such a way as to give the plaintiffs some comfort but we cannot find in that opinion any clear indication that the plaintiffs, although members of the bargaining unit, were members of the union, or that internal union remedies were available to them, or, if such remedies were available, that they. had not been exhausted. There, again, the emphasis was on the Railway Labor Act and jurisdiction of the Adjustment Board.

The sixth case, Robinson v. Nick, supra, 235 Mo.App. 461, 136 S.W.2d 374, 387, seems to us to oppose the plaintiffs' position, rather than to support it.

We therefore adhere to the firmly established rule that remedies within the union, when available, as here, are to be pursued as a prerequisite to relief in the federal courts and we indulge in no exception merely because the discrimination alleged is based on race. The rule was recognized in both Steele, p. 207 of 323 U.S., 65 S.Ct. 226; and Tunstall, pp. 213–14 of 323 U.S., 65 S.Ct. 235, even though each of these cases concerned claimed racial discrimination.

■ 2. The railroad. A like result is forthcoming with respect to the Missouri Pacific. Rule 18 of the collective bargaining agreement between the Brotherhood and the railroad relates to

"Discipline and Grievances". It calls for prompt investigation before dismissal, for representation, and for appeal. It also provides similar treatment for an employee who considers himself "unjustly treated".[2] This is broad language and obviously applicable to the type of complaint the plaintiffs present. See Harrison v. Pullman Co., 68 F.2d 826 (8 Cir. 1934). The necessity of exhausting these contractual remedies as a condition to relief in the courts is recognized, both under Missouri law, Transcontinental & W. Air, Inc., v. Koppal, 345 U.S. 653, 662, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Gomillia v. Missouri Pac. R.R., 345 S.W.2d 202, 208–09 (Mo.1961); Reed v. St. Louis S. W. R.R., Mo.App., 95 S.W.2d 887, 889 (Mo.App.1936), and under federal law, Republic Steel Corp. v. Maddox, 379 U.S. 650, 652–59, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Tunstall v. Brotherhood of Locomotive Firemen, supra, pp. 213–214 of 323 U.S., 65 S.Ct. 235.

B. *Indispensable parties.* What we have said as to exhaustion of remedies makes it unnecessary for us to consider the additional issue relative to indispensable parties. Nevertheless, because of the nature of the case, we touch briefly upon it. The parties so claimed by the defendants to be indispensable are the Brotherhood and those employees whose seniority would be adversely affected by any decree in favor of these plaintiffs.

■ 1. The Brotherhood. The amended petition incorporates verbatim the supplemental agreement of April 1963 and reveals the agreement to be one between the Brotherhood and the Missouri Pacific. In addition to claiming actual and punitive damages against the Brotherhood, the amended petition challenges the supplemental agreement and seeks to enjoin action under it. The Brotherhood, therefore, being a party to that agreement, is clearly an entity whose

2. Rule 18.
    "(k) An employe who considers himself unjustly treated shall have the same right of investigation, hearing and appeal as herein provided, if written request therefor is made to his immediate

supervisor within seven days of the cause for complaint.
    "(l) The time limits herein may be extended by mutual agreement and do not apply in cases of request for leniency."

presence is indispensable to the maintenance of the present suit. Order of Railroad Telegraphers v. New Orleans T. & M. Ry., 229 F.2d 59, 67 (8 Cir. 1956), cert. denied 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861; Shields v. Barrow, 17 Howard (58 U.S.) 130, 139, 15 L.Ed. 158 (1855); Order of Railroad Telegraphers v. Union Pac. R.R., 231 F.Supp. 33, 36–37 (D.Colo.1964).

Yet the Brotherhood is certainly not here as a direct party defendant. It is not even named in the amended petition. Three of its officers and its Grand Lodge are named but service has not been effected even upon them. Although the particular System Board, the local lodges, and their respective officers are named and some of these have been served, it is the Brotherhood, not any subdivision or affiliate, which is the collective bargaining representative. Childers v. Brotherhood of R.R. Trainmen, 192 F.2d 956, 959–60 (8 Cir. 1951); Westchester Lodge 2186, Brotherhood of Railway Clerks, etc., v. Railway Express Agency, 218 F. Supp. 187, 189 (S.D.N.Y.1963), modified on other grounds, 329 F.2d 748 (2 Cir. 1964).

■ The attempt at representation of the Brotherhood by a defendant class also fails. Rule 23(a), F.R.Civ.P., makes it clear that, for a federal court class action, it is necessary that (a) there be a class; (b) the class be so numerous as to make it impracticable to bring all before the court; (c) those representing the class be such as will fairly insure the adequate representation of all; and (d) the right sought to be enforced against the class is joint or common. See Montgomery Ward & Co. v. Langer, 168 F.2d 182, 187 (8 Cir. 1948). The existence of these factors in the present posture of this case is tested by the allegations of the complaint. The second factor is alleged but we fail to find sufficient indication of the others. The System Board, the lodges, and their officers, as such, are not members of any appropriate class

here and, in any event, we are given no assurance that these essentially local entities are representative of the membership of this large Brotherhood as a whole or possess interests common to the entire Brotherhood so as fairly to "insure the adequate representation of all". Johnson v. Riverland Levee Dist., 117 F.2d 711, 714–715 (8 Cir. 1941). See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

■ 2. Employees with seniority adversely affected. It is readily apparent that any local lodge member who holds Class A or Class B seniority and any Class C employee who has accepted the benefit of the supplemental agreement might well be adversely affected by any decree in this action. Such persons therefore are indispensable parties. Order of R.R. Telegraphers v. New Orleans T. & M. Ry., supra, p. 67 of 229 F.2d; Nix v. Spector Freight System, Inc., 264 F.2d 875, 877 (3 Cir. 1959). There has been no attempt, however, to define these particular adversely affected persons as a class. The need to do so is not fulfilled by an attempt to include the entire local membership, for this also embraces persons of differing and perhaps favored seniority status. There is, thus, an absence of the common interest essential for an appropriate class.

The plaintiffs' original petition was not peremptorily dismissed for lack of indispensable parties but, as indicated by Warner v. First Nat'l. Bank, 236 F.2d 853, 858 (8 Cir. 1956), cert. denied 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162; Olson v. Miller, 105 U.S.App.D.C. 55, 263 F.2d 738, 140–41 (D.C.Cir.1959); 3 Moore's Federal Practice, Par. 21.04, pp. 2906–07 (2d Ed. 1964); 2 Barron & Holtzoff, Federal Practice & Procedure, § 542, p. 214 (Wright Rev. 1961), opportunity was afforded to remedy the procedural defect. However, the defect remains and there is now no alternative to dismissal.

Affirmed