774 F.2d 1162
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charlie W. Gooden, R.C. Mitchell Sr., Charlie Miller,
Chester Scales and Eddie B. Farris, Plaintiffs-Appellees,
v.
Illinois Central Gulf Railroad and Brotherhood Railway
Carmen of the U.S. and Canada, AFL-CIO, Defendants-Appellees,
Brotherhood of Railway Carmen, Lodge #164, Defendant-Appellant,
T.N. Smith, D.E. Brower, M.E. Bell, E.G. Gates, W.L. Blend,
and the Seniority Protection Association,
Defendant-Intervenors-Appellants.
 No. 84-5630
 United States Court of Appeals, Sixth Circuit.
 9/3/85
 
 W.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
 BEFORE: JONES, Circuit Judge, EDWARDS, Senior Circuit Judge; and SILER, District Judge.*
 PER CURIAM.
 
 
 1
 The Brotherhood of Railway Carmen, Lodge 164 and five employees of the Illinois Central Gulf Railroad (ICG) appeal the consent decree negotiated by the parties of record and approved by the district court. We affirm the judgment entering the consent decree in this Title VII action.
 
 
 2
 Five black plaintiffs instituted this action of December 21, 1979, under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Sec. 1981 against the defendants ICG, the Brotherhood Railway Carmen of the United States and Canada (International), and the International's subordinate lodge, Local 164. The plaintiffs' complaint alleged that they were precluded from advancing beyond their lower paying carmen helpers' positions at ICG's facility in Memphis, Tennessee because of a discriminatory seniority system contained in the collective bargaining agreement between the ICG and the International. After extensive discovery, the International and ICG agreed to settle with the plaintiffs. The parties negotiated the terms of the consent decree and the district court entered the order on October 22, 1981. In the Consent Order, ICG and the labor organizations acknowledged that certain of their practices had given rise to the inference that race discrimination exists with respect to the hiring, classification, promotion and lay-off of Carmen Helpers at the Johnston Yard facilities of Defendant Illinois Central Gulf Railroad in Memphis, Tennessee. The Consent Order provided that the seniority dates of the five plaintiffs would be adjusted retroactively. All other claims of the plaintiffs were dismissed with prejudice.
 
 
 3
 After entry of the Consent Order, Local 164 filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to vacate the Consent Order. The motion sought leave pursuant to Rule 24(a) of the Federal Rules of Civil Procedure for five individual members of Local 164 to intervene in the action. The five proposed intervenors were employees of ICG who were laid off as a result of the retroactive adjustment of the plaintiffs' seniority dates. Local 164 and the proposed intervenors alleged that they had not received prior notice of the Consent Order's potential adverse effect on the seniority dates of employees other than the plaintiffs.
 
 
 4
 On March 5, 1982, the District Court conducted a hearing on the motion of Local 164 and the proposed intervenors. Representatives of Local 164 and all five of the proposed intervenors were present. The district court denied the motion. The court concluded that there was no valid basis upon which it could set aside the Consent Decree because considerable discovery had been taken by the parties which uncovered probative evidence of discrimination and because the factors and circumstances established in Claiborne v. Illinois Central Railroad, 583 F.2d 143 (5th Cir. 1978), cert. denied, 442 U.S. 934 (1979) (upholding claims of racial discrimination by carmen helpers at the Railroad's New Orleans facility), were substantially similar to those existing at the Railroad's Memphis location. The district court further held that while the proposed intervenors may have a cause of action against the International or Local 164 based on their alleged lack of prior notice of the potential adverse impact of the Consent Order, such allegations did not provide a sufficient basis to vacate the Consent Order.
 
 
 5
 The appellants contend that the district court abused its discretion in approving initially, and in refusing subsequently to vacate, the negotiated Consent Order. In Title VII litigation, negotiated consent settlements enjoy a presumption of validity. United States v. City of Alexandria, 614 F.2d 1358, 1359, 1362 (5th Cir. 1980). We do not believe that the district court abused its discretion in entering the decree. The decree was negotiated by the employer, the International, and the plaintiffs and approved by the district court. We reject appellants' contention that Firefighters Local Union No. 1789 v. Stotts, 104 S. Ct. 2576 (1984) controls this case. In Stotts, the Court ruled that a court may not disregard a bona fide seniority system by ordering retroactive seniority even though adherence to the system would frustrate the attainment of racially-based hiring and promotion percentage goals contained in a consent decree. The Court specifically held that Title VII protects bona fide seniority systems against assault in a pattern and practice suit. The Court noted, however, that rightful place seniority may be awarded upon a showing that specific individuals were actual victims of discrimination. Id. at 2588.
 
 
 6
 Evidence of actual discrimination existed in this case as to each of the five plaintiffs. The original collective bargaining contract was effective August 20, 1945. At that time there was a segregated system, with black employees assigned to be carmen helpers, and white employees allowed to be carmen apprentices. In 1972, apprentices were given retroactive seniority upon advancement, whereas carmen helpers were not. Three of the five plaintiffs were hired prior to 1965 and the other two prior to 1968 when blacks were mainly hired into helper positions; the individual appellants, on the other hand, were all hired into the apprenticeship program in 1974. An employee who is a carman helper keeps his helper seniority for layoff and other purposes just as apprentices keep their apprentice seniority vis-a-vis other apprentices. However, if a helper were to transfer into the apprenticeship program, he would lose his helper seniority and be at the bottom of the apprenticeship list subject to immediate furlough; thus an incentive exists for helpers to stay in--or be 'locked-into'--that position. Similarly, a black helper working 20 years for the ICG who 'earned' his carmen seniority date would similarly be placed at the botton of the carmen's seniority roster. In contrast, when the apprentices eventually earned the right to be placed on the carmen's seniority roster, they received a retroactive date back to the date they began their apprenticeship. Thus, there was a clear potential for the five plaintiffs to make a showing of actual individual discrimination. See also Claiborne v. Illinois Central Railroad, 583 F.2d 143 (5th Cir. 1978) (finding of individual discrimination in nearly identical circumstances). Consequently, the district court did not abuse its discretion in entering the consent decree.
 
 
 7
 The appellants also argue that the district court erred in entering the decree because they were not given notice of the consent order. This argument is without merit. Local 164 is a subordinate body of the International with certain day-to-day duties concerning its membership and the application of the parties' labor agreements, but it is the International that has ultimate authority with respect to the consummation of amendments to the agreements and any adjustment in the applicable seniority provisions. The International rather than Local 164 has exclusive jurisdiction over the original negotiation and any subsequent modification of the collective bargaining agreement, including the provisions for seniority rights. Childers v. Brotherhood of Railway Trainmen, 192 F.2d 956 (8th Cir. 1951).
 
 
 8
 Last, the denial of the motion to intervene was not error because the intervenors had no legally cognizable interest in the seniority provisions. In Stotts v. Memphis Fire Department, (Stotts II), 679 F.2d 579, 582 (6th Cir. 1982), rev'd on other grounds, 104 S. Ct. 2576 (1984), the Sixth Circuit stated as follows regarding the application of eleven non-minority employees to intervene in a Title VII action under Rule 24(a) for the purpose of opposing a consent settlement that adversely affected their seniority positions: 'There is no legally cognizable interest in promotional expectations which presumtively could only occur as the result of discriminatory employment practices.' Under circumstances such as those present in the instant case, the district court was required only to give the proposed intervenors 'an opportunity to air their objections.' Id. at 584. Having done so, the district court did not abuse its discretion in denying the motion to intervene.
 
 
 9
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation