277 F.2d 698
 R. E. FINGAR, Individually, and as Representative of Yard Firemen and Enginemen on all Florida Divisions of Seaboard Air Line Railroad Company, Appellant,
v.
SEABOARD AIR LINE RAILROAD COMPANY et al., Appellees.
 No. 17905.
 United States Court of Appeals Fifth Circuit.
 April 26, 1960.
 
 J. Donald Bruce, Jacksonville, Fla., for appellant.
 Chester Bedell, Charles R. Scott, John S. Cox, Jacksonville, Fla., Scott & Cox, Jacksonville, Fla., Harold C. Heiss, Russell B. Day, Cleveland, Ohio, Bedell, Bedell & Dittmar, Jacksonville, Fla., of counsel, for appellee, Brotherhood of Locomotive Firemen and Enginemen, and related appellees.
 Before TUTTLE, JONES and BROWN, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment in favor of the defendant railroad and the individuals as officers of locals of, and the locals of, the Brotherhood of Locomotive Firemen and Enginemen.
 
 
 2
 This action was brought under the authority of 28 U.S.C.A. § 1337 which gives United States District Courts "original jurisdiction of any civil action on proceeding arising under any Act of Congress regulating commerce * * *". The Supreme Court has held that a suit against a railway brotherhood as bargaining representative under the terms of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. is comprehended within these terms. See Conley v. Gibson, 355 U.S. 41, 44, 78 S.Ct. 99, 2 L.Ed.2d 80.
 
 
 3
 The complaint alleged that the plaintiff and the class he represented were yard firemen or enginemen employed by the defendant Seaboard Air Line Railroad, that they were members of the locals of the Brotherhood, as were also road enginemen and firemen; the function of the two classes of employees was indicated by their title; yard firemen worked in the freight and passenger yards and road firemen worked on the railroad runs or trips; it alleged that the contract between the Brotherhood and the railroad provided that separate seniority would be established for yard men and road men and that "seniority in yard service shall rule in working assignments to yard runs"; that contrary to this provision the railroad, with the agreement of the defendant locals and Brotherhood, assigned road firemen and supervisors to yard runs, so that the yard men were denied "assignments" that they were entitled to "protect".
 
 
 4
 The complaint alleged that the yard men were a minority of the membership in the Defendant subordinate lodges; that under the provisions of the Railway Labor Act grievances against the railroad were processed through the local grievance committee; that "the defendant subordinate lodges with the knowledge, sanction and direction of the defendant Brotherhood, its officers and agents, and the Subordinate Lodges' officers named defendants herein have arbitrarily ruled that the Local Grievance Committees cannot consider this grievance of the plaintiff's hereinabove alleged unless a majority of the members of the subordinate lodges * * * vote to allow the Local Grievance Committees to represent plaintiff in presenting their grievances * * *"; that this plaintiff had presented his grievances to the local lodges but they had refused to act "because of the negative votes of the road firemen and road enginemen who are receiving the benefits of job assignments of the defendant Railroad Company in yard work."
 
 
 5
 The railroad defendant and the brotherhood defendants all moved to dismiss the complaint for failure to state facts on which relief could be granted and moved for summary judgment. The Court granted the motion for summary judgment, declining to pass on the motion to dismiss.
 
 
 6
 The pleadings, motions and supporting affidavits make clear, without any issue, several facts: Appellant bases his claim on an existing contract with the railroad; this contract is fair on its face and is in fact relied upon by appellant; vindication of his rights requires interpretation of the terms of the contract relating to "yards" and "yard runs"; no written claim or grievance had been presented to this railroad touching on the alleged breach of contract as required under the bargaining agreement between the railroad and the brotherhood. Thus, whatever claims Fingar had against his own local, its officers or the Brotherhood because of their failure to perform their duty under the act and under the union's constitution, it is clear that the Trial Court properly granted summary judgment in favor of the railroad defendant.
 
 
 7
 The Supreme Court has held, beginning with Slocum v. D., L. & W. Railroad Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, that, in an action by a railroad employee against his employer seeking an interpretation or ascertainment of rights under the contract of employment, when the vindication of such claimed right requires the interpretation or construction of the terms of the contract, the Adjustment Board established by the Railway Labor Act has exclusive jurisdiction.
 
 
 8
 The cases that may appear superficially to be inconsistent with this principle are found, on close examination, not in conflict, either because, although they were suits against railroad employers by their employees, they do not require any construction of the contract, see Steele v. L. & N. Railroad, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen et al., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, in which it required no analysis or interpretation of the contract to show that the contract was invalid because it discriminated against Negro employees, or because they were suits against the brotherhood, as to which the Adjustment Board was powerless to act. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. See also this court's opinion in Richardson v. Texas & New Orleans Railroad Company, 5 Cir., 242 F.2d 230. The gravamen of the appellant's complaint here is that the Adjustment Board will not hear his complaint unless it is processed through the Grievance Committee to the railroad management, and is presented to it thereafter by the brotherhood representative; that because of internal policies or procedures or practice, he cannot get the brotherhood representatives to present his grievance even to the Railroad. Obviously this failure, if it exists, calls in question the reciprocal rights and obligations of the member and his brotherhood, but it does not subject the railroad defendant to suit in the District Court to resolve an issue that the law has clearly stated is exclusively confided to the Adjustment Board.
 
 
 9
 Turning next to the case against the individuals and the locals and the brotherhood we find there are additional facts that are without dispute; the brotherhood's constitution which is binding on appellant in the same manner that he is bound by contract, International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed. 2d 1018, provides, among other things, that a member with a grievance may present his complaint to his lodge and if a majority of its members consider it has merit, it is referred to the local chairman for adjustment. Here is where appellant says he has been deprived of his rights. He says he did this but that because the majority of the members of his lodge were road men, benefiting from the condition complained of, they refused to favor his grievance; however, the constitution also provided for a written appeal from action by the lodge to the Chairman of the Grievance Committee (for this particular railroad, we assume). Fingar wrote a letter to the International President who replied, advising him to take the matter up first with his local, but sending a copy of the letter to the General Chairman. General Chairman Williams was not helpful, but invited a formal presentation of the grievance to the committee. The president notified Fingar also "if you are dissatisfied with any ruling made by the General Chairman, you may appeal to the Executive Committee or the General Grievance Committee in the manner contemplated by Article 13, Section 4 of the constitution"; the constitution further provided for an appeal from the Executive Committee to the International President and from him to the Board of Directors.
 
 
 10
 The record clearly shows without dispute that no effort was made by Fingar to follow these procedures. He doubtless felt he was getting a run-around and became impatient, and when his local Chairman wrote him that "our only hope in this direction is to carry this case to court", he followed that advice without starting the appeal proceedings. This he did notwithstanding the provisions of the constitution:
 
 
 11
 "Sec. 9(a) No member or subordinate lodge of the Brotherhood shall resort to the civil Courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any member, subordinate lodge or the organization, until such member or lodge shall first have exhausted all remedy by appeal, provided by the laws of the Brotherhood for the settlement and disposition of any such rights, grievances or wrongs."
 
 
 12
 Appellant did not allege in his complaint that there was any hostile discrimination against him or his class, except as related to the minority position they held "in the defendant subordinate lodges". There was no allegation that an appeal to the General Committee for the Seaboard Railroad as a whole would be handled by a hostile majority, much less that an appeal to the International Executive Committee, president, or directors, would be accorded any hostile treatment. Thus no reason was alleged and none, of course, shown on the motion for summary judgment why an appeal as provided for in the constitution would be nugatory for any reason of bad faith or any other improper motive.
 
 
 13
 We think it clear from what we have said in the Richardson case, supra, that the district court's jurisdiction can be invoked to prevent an illegal deprivation by a railroad brotherhood of the right to fair representation of its members both in bargaining and in enforcement of contractual rights. Where, however, it appears, without dispute, that the member has not pursued the appellate procedure available to him as a prerequisite to filing civil suit and that no basis for a finding that such appeal would be inherently futile or unfair has been shown, the courts should not undertake to direct the brotherhood members and officials how to handle their grievance procedures.
 
 
 14
 This judgment is affirmed.