**James ANDERSON, Plaintiff,**

**v.**

**FORD MOTOR COMPANY, a Delaware corporation, International Union, UAW, Local Union 600, UAW, jointly and severally, Defendants.**

**Leroy SIMMONS, Joe Williams, Peter Betanzos, John Hudson, James Behary, Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, a Delaware corporation, International Union, UAW, Local Union 600, UAW, jointly and severally, Defendants.**

**Civ. A. Nos. 32945, 32946.**

United States District Court, E. D. Michigan, S. D.

Oct. 26, 1970.

ganization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

J. Robert Gragg, Detroit, Mich., for plaintiff Anderson.

Harry M. Philo, Philo, Maki, Ravitz, Glotta, Adelman, Cockrel & Robb, Detroit, Mich., for plaintiffs Leroy Simmons, Joe Williams, Peter Betanzos, John Hudson and James Behary; Michael Adelman, Glotta & Adelman, Detroit, Mich., of counsel.

Wright Tisdale, Joseph A. O'Reilly, James R. Jackson, Dearborn, Mich., for Ford Motor Co.

John A. Fillion, Detroit, Mich., for International Union, UAW, and its Local 600.

## OPINION

FREEMAN, Chief Judge.

Civil Actions 32945 and 32946 were commenced under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, which provides:

"(a) Suits for violation of contracts between an employer and a labor or-

The plaintiff in Civil Action No. 32945 is James Anderson, an employee of the defendant Ford Motor Company and a member of defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and defendant Local Union 600, UAW. Leroy Simmons, Joe Williams, Peter Betanzos, John Hudson, and James Behary, plaintiffs in Civil Action No. 32946, are also employees of defendant Ford Motor Company and members of defendants UAW and Local 600. Since the complaints filed in both suits are identical except for the named plaintiffs, consolidation of the actions was ordered.

The events giving rise to the complaints are undisputed by the parties and occurred at defendant Ford's Rouge Plant Steel Division in Dearborn, Michigan. That Division, prior to 1962, consisted of three units: the Open Hearth, the Rolling Mill, and the Miscellaneous. The Miscellaneous Unit, in turn, was

broken down into two subunits: the Blast Furnace and the Coke Ovens.

In 1962, defendant Ford Motor Company decided to phase-out its Open Hearth steel-making process at Dearborn and supplant it with the Basic Oxygen Process. The Basic Oxygen Process (BOP), however, would not require as many employees as the Open Hearth. Therefore, on August 22, 1962, Ford Motor Company and Local 600 entered into an agreement, approved by the International UAW, concerning the placement of those Open Hearth employees who would be deprived of jobs by the introduction of the BOP.

Under this agreement, all employees coming into any of the Steel Division Units after August 15, 1962, would be considered temporary employees. Those temporary employees would then be displaced by Open Hearth employees who had been in the Open Hearth prior to August 15, 1962, and who were not being transferred to the BOP.

On January 6, 1964, Ford Motor Company and Local 600 entered into a supplemental agreement in order to resolve problems that were emerging in the employee displacement procedure established by the 1962 contract. The 1964 agreement provided that where a classification was carried over from the Open Hearth to the BOP, the employees in such classification could also transfer over to the BOP in the order of their class seniority. (¶ 2). In addition, where new classifications were included in the BOP, those jobs were to be filled by Open Hearth employees having the necessary qualifications as determined by management. (¶ 3). Finally, the 1964 agreement provided that Open Hearth employees not eligible for assignment in the BOP would, at the time of the Open Hearth discontinuance, be permitted to exercise their seniority under the provisions of the August 22, 1962, contract. (¶ 4).

On March 2, 1964, the BOP began partial operations. It was not until the beginning of October, however, that the BOP was completely operational and the Open Hearth closed. Subsequent to that final shut-down of the Open Hearth, plaintiffs, who had entered the Open Hearth prior to August 15, 1962, were placed by Management in the Miscellaneous Unit of the Steel Division. Plaintiffs contend that those Miscellaneous Unit assignments violated their seniority rights under the 1962 collective agreements. For these allegedly improper assignments, each plaintiff requests damages "in excess of * * * Four Thousand Dollars per year" (Complaint) from Ford Motor Company.

Plaintiffs also charge that the defendant Unions arbitrarily refused to process their grievances over these assignments beyond the first step of the four-stage grievance procedure established in the Master Collective Bargaining Agreement between Ford Motor Company and the International UAW. Plaintiffs further allege that defendant Unions conspired with Ford Motor Company to deny plaintiffs their rights under the Master Collective Bargaining Agreement and the 1962, 1964 Special Agreements. For this alleged breach by the defendants of their duty to fairly represent plaintiffs, as required under the National Labor Relations Act, each plaintiff requests compensatory damages "in excess of * * four thousand dollars per year" and $100,000 punitive damages.

The cases are presently before the court on motions for summary judgment filed by both Unions and Ford Motor Company. Summary judgment is appropriate:

> "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) Federal Rules of Civil Procedure.

Defendant Unions' motion for summary judgment must be granted under the test of Rule 56(c).

The UAW Constitution of 1964 sets up an internal appeal procedure for

members who feel themselves aggrieved by an action of the Union and imposes a duty on members to exhaust that procedure before appealing to a civil court. (Article 32, Section 12). Where an amalgamated Local is involved, the first step of that appeal procedure is to the Local Union's delegate body (Article 32, Section 3). If that decision is unfavorable to the aggrieved member, he may then appeal to the UAW International Executive Board (Article 32, Sections 6 and 7). From an unfavorable ruling at this stage, the member may appeal to the "Constitutional Convention of the International Union," or, in certain cases, to the UAW's Public Review Board (PRB), which consists of "impartial persons of good public repute, not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." (Article 31, Section 1, Article 32, Section 9). Should the appeal be to the PRB, the appellant is still "entitled to appeal the matter to the Constitutional Convention of the International Union" if the PRB dismisses the case for lack of jurisdiction. (Article 32, Section 12).

■ Plaintiffs have not alleged that they pursued the above-descibed intra-union remedies, nor have they introduced sworn testimony to that effect. That defect alone would be sufficient grounds for granting defendant Unions' motion for summary judgment under Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968):

> "In sustaining the union's motion for summary judgment, the court [district] held that, assuming the International Union owed a duty to protect appellant, she failed *to allege or show* any attempt to initiate her intra-union remedies prescribed by the constitution and by-laws of the International Union and, in this holding, we concur." (Emphasis added.)

Moreover, defendant Unions have introduced two affidavits, one of Mr. William Brown, Recording Secretary for Local 600, and the other of Mr. William Beckham, Administrative Assistant to the International Union President, stating that the affiants are in charge of intra-union appeal records and that their examinations of those records show plaintiffs Simmons, Williams, Betanzos, Hudson and Behary never filed an appeal from the Unions' acts now being challenged. Hence, not only have the five plaintiffs in Civil Action No. 32946 failed to allege or to show that they initiated intra-union appeals, but also the uncontroverted affidavits submitted by defendants indicate that those plaintiffs did not file such an appeal.

Summary judgment, therefore, must be entered for defendant Unions in Civil Action No. 32946 under Rule 56(e) of the Federal Rules of Civil Procedure.

Defendants, however, have also filed an affidavit of a Mr. Donald Klein, stating that plaintiff Anderson did initiate an intra-union appeal and carried it through to the UAW Public Review Board. The decision of that Board, a copy of which was attached to the affidavit, was a "dismissal * * * without prejudice to appellant's timely appeal to the Constitutional Convention pursuant to Article 32, Section 9, of the Constitution." But according to the affidavit of William Beckham, who processes all appeal to the UAW Constitutional Convention: "I have reviewed the files and records of my office and find that no appeal to a Constitutional Convention has ever been taken by Local 600 member James Anderson." (Affidavit p. 2)

Indeed, plaintiff Anderson has not alleged that he did appeal to the Constitutional Convention, which is the final step in the UAW intra-union appeal procedures; nor has plaintiff alleged that such an appeal would have been futile. In discussing a similar situation, Judge Thomsen of the United States District Court for the District of Maryland, said:

> "The rule that courts will not intervene in intra-union disputes until appeals within the union have been exhausted is based upon sound policies: that union appellate tribunals may

take corrective action, reducing the burden on the courts; that the courts may have the benefit of the expert judgment of those tribunals; and that unions should be given full autonomy and responsibility. * * * The rule is subject to exceptions, where the remedy provided would be futile or a sham or unreasonable because of probable delays.

"In the instant case no facts have been alleged or shown sufficient to warrant a finding that the appeal to the international executive council provided by the constitution of the union would be futile, delayed, or otherwise unreasonable. *Nor is there any reason to believe that a further appeal to the international convention would be futile or a sham* * * *." Local Union No. 28, etc. v. International Bro. of Elec. Workers, 197 F.Supp. 99, 107 (D.C.Md. 1961). (Emphasis added.)

That reasoning was approved by this court in Harrington v. Chrysler Corp., 303 F.Supp. 495 (E.D.Mich.1969). *Accord,* Stringfield v. International Union of United Rubber, etc., Workers, 190 F. Supp. 380 (E.D.Mich.1959), aff'd, per curiam, 285 F.2d 764 (6th Cir. 1960).

We thus conclude that defendant Unions' motion for summary judgment must also be granted in Civil Action No. 32945, since plaintiff Anderson has failed to allege or to show exhaustion of his intra-union remedies.

Defendant Ford Motor Company has likewise filed a motion for summary judgment on the grounds that the material facts are not in dispute and that the only issue presented by plaintiffs' suits against it is a legal one of contract interpretation. Ford is correct on the point that the facts relevant to the present motion for summary judgment are uncontroverted, as we have already noted, and that the sole issue raised for our consideration is the proper construction of certain provisions in the 1962, 1964 Collective Bargaining Agreements. Those provisions provide:

Local Agreement, effective August 22, 1962:

"1. Employes transferring or gaining their basic seniority in the Open Hearth, Rolling Mill and Miscellaneous Units from the period August 15, 1962, until the terminal date of this agreement, defined in provision 7 below, shall be considered temporary employes of the Steel Division for the purpose of this agreement. * * *

* * * * * *

"3. Those Open Hearth Unit employes not considered temporary under provision 1 above shall, upon being reduced from the Open Hearth Unit by reason of its discontinuance, displace temporary employes in the Rolling Mill and Miscellaneous Units provided they have greater Rouge seniority than the employes affected and provided they are qualified to perform the job of the employes they displace.

* * * * * *

"6. Management, in placing available Open Hearth employes, will give consideration to the classification previously held although the placement of such employes shall be solely within Management's discretion. Any claim that displaced employes are not being properly placed may be brought to the attention of the Company. In the event satisfactory action is not taken within seven days subsequent to such notification, a grievance may be filed in the regular grievance procedure as provided for in Article VII, Section 3, of the Master Agreement dated October 20, 1961."

Local Agreement, effective January 6, 1964:

"4. Open Hearth employes who are not eligible for assignment in the Basic Oxygen Furnace will, at the time of the Open Hearth's discontinuance, exercise their seniority under the provisions of local agreement, 'Placement of Open Hearth Unit Employes,' dated August 22, 1962.

"5. It is understood that both the Open Hearth and Basic Oxygen Fur-

nace will, for a period of time, operate simultaneously. The duration of parallel operation will depend on the rapidity with which the Basic Oxygen Furnace achieves full production. In order that no Open Hearth employe be denied a job in the Basic Oxygen Furnace, Rolling Mill, Blast Furnace or Coke Ovens by virtue of being retained to 'phase-out' the Open Hearth, the final assignment of each Open Hearth employe will be determined prior to the start-up of the Basic Oxygen Furnace. This determination having been made, the order of placement and/or transfer will be within the proper discretion of management. * * * "

Plaintiffs contend that under Paragraph 3 of the 1962 agreement, permanent Open Hearth employees not transferred to the Basic Oxygen Furnace had the right to exercise their seniority and displace temporary employees in the Rolling Mill Unit, provided those Open Hearth employees were qualified to perform the jobs of the workers they were displacing. Plaintiffs also maintain that under Paragraph 3 of that agreement, no permanent Open Hearth employee could be placed in the Miscellaneous Unit as long as there were jobs which those employees could perform in the Rolling Mill Unit and which were being performed by "temporary" workers with less seniority. (Section 1, 1962 agreement). Finally, plaintiffs allege that under Paragraph 5 of the 1964 agreement, all Open Hearth employees were to receive their final assignments to either the Miscellaneous Unit, the Rolling Mill, or the Basic Oxygen Furnace prior to the start-up of the BOP. Plaintiffs, therefore, conclude that since they were assigned to the Miscellaneous Unit after the start-up of the BOP, and since at the time they were assigned to the Miscellaneous Unit, lesser seniority "temporary" employees continued to hold jobs in the Rolling Mill, the Company has violated their rights under the Collective Bargaining Agreements.

On the other hand, Ford Motor Company and the defendant Unions would construe Paragraphs 3 and 6 of the 1962 agreement as giving management sole discretion on whether permanent Open Hearth employees not transferred to the BOP would displace temporary employees in the Rolling Mill or the Miscellaneous Unit, with permanent employees having the right to exercise their seniority only within the Unit to which they were transferred. Ford Motor Company further contends that Paragraph 5 of the 1964 agreement did not require it to give Open Hearth employees their final assignments prior to the start-up of the BOP, but only to place employees in the Basic Oxygen Furnace, Rolling Mill, Blast Furnace or Coke Ovens after the Open Hearth was shut down. Hence, Ford concludes that since plaintiffs were assigned to the Miscellaneous Unit, i. e., Blast Furnace and Coke Ovens, when the Open Hearth operation was phased out, their rights were not violated under the special agreements.

█ In our opinion, neither Paragraph 3 of the 1962 agreement nor Paragraph 5 of the 1964 agreement is susceptible of the interpretation which plaintiffs ask this court to place on it. Section 3 of the 1962 agreement provides that Open Hearth employees not considered temporary under Paragraph 1 shall "displace temporary employees in the Rolling Mill and Miscellaneous Units provided they have greater Rouge seniority than the employees affected. * * " Construed alone, it might be possible to read this language as plaintiffs request, i. e., that permanent Open Hearth employees have the right to displace any temporary employee in either the Rolling Mill or Miscellaneous Unit, at the permanent employee's option.

But Paragraph 3 cannot be construed in a vacuum. It must be read in conjunction with Section 6 of the same agreement, which provides: " * * * placement of such employe [Open Hearth permanent employees] shall be solely within Management's discretion." If Section 3 is construed to mean that a

permanent Open Hearth employee may elect whether to displace a temporary employee in the Rolling Mill Unit or in the Miscellaneous Unit, then Section 6's mandate that the "placement of such employes shall be solely within Management's discretion" is rendered meaningless. We believe, therefore, that Section 6 and Section 3, when read together, mean that management must place Open Hearth employees not transferred to the BOP in either the Rolling Mill or Miscellaneous Unit, provided there are temporary employees in those Units and provided that the permanent Open Hearth employees are qualified to perform the jobs of the temporary employees. It is, however, for management to decide in which Unit—Rolling Mill or Miscellaneous—the Open Hearth employees will exercise their seniority to displace temporary employees.

Nevertheless, in their briefs, plaintiffs state that the purpose of the 1962 agreement was to permit high seniority employees to obtain placements in the Rolling Mill Unit; for placements in the Rolling Mill are more desirable than placements in the Miscellaneous Unit. (Plaintiffs' brief p. 3). Plaintiffs then ask this court to construe Paragraph 3 to fulfill that apparent purpose and to require defendant Ford Motor Company to assign plaintiffs to the Rolling Mill Unit.

We are unable to agree with plaintiffs that the 1962 contract was negotiated to insure that high seniority Open Hearth employees received placements in the Rolling Mill Unit for two reasons. First, there is absolutely no support of this "apparent purpose" in any language contained in the collective agreement.

■ Second, Robert Hall, a member of the Union committee that negotiated the 1962 agreement, states that this agreement was intended to allow Open Hearth employees who could not obtain jobs in the BOP to remain in the Steel Division, i. e., the Rolling Mill and Miscellaneous Units, rather than being transferred to other Divisions of Ford

Motor Company when the Open Hearth was phased out. (Affidavit pp. 2–3). Since that affidavit is uncontroverted by sworn testimony from the plaintiffs, it must be accepted as true on a summary judgment motion under Rule 56(e) of the Federal Rules of Civil Procedure.

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Plaintiffs also contend that Ford Motor Company violated their rights under Section 5 of the 1964 agreement when it assigned them to the Miscellaneous Unit after the start-up of the BOP. Thus, plaintiffs would construe the language "the final assignment of each Open Hearth employe will be determined prior to the start up of the Basic Oxygen Furnace" to mean "each Open Hearth employe will be given their assignments prior to the start-up of the Basic Oxygen Furnace." (Plaintiffs' brief p. 8).

■ Yet, the plain meaning of the word "determined" is to fix "conclusively" or "to settle" or "to decide"; not "to give." Hence, if plaintiffs' final assignments were determined by management prior to the starting up of the BOP, then the requirement of Section 5 has been met regardless of whether plaintiffs actually received their final assignments before that time.

■ Moreover, plaintiffs' rights under Section 5 were not violated even if management had failed to determine their final assignments until after the start-up of the BOP. That is because the sole purpose of Section 5 is to guarantee: " * * * that no Open Hearth employe be denied a job in the Basic Oxygen Furnace, Rolling Mill, Blast Furnace or Coke Ovens by virtue

of being retained to phase-out the Open Hearth, * * *." And plaintiffs were not denied a job in those Units. They were, instead, finally placed in jobs in the Miscellaneous Unit.

For all the above reasons, we conclude that plaintiffs' rights under the 1962 and 1964 special agreements were not infringed by Ford Motor Company's placement of them in the Miscellaneous Unit. Defendant Ford Motor Company's motion for summary judgment must, therefore, be granted.

■ In addition, our finding that plaintiffs' assignments to the Miscellaneous Unit were proper under the 1962, 1964 agreements justifies the Unions' alleged failure to dispute those assignments. Hence, that failure cannot constitute a breach of the Unions' duty of fair representation, which is the basis of plaintiffs' complaint against the UAW and Local 600. On this ground alone, an entry of summary judgment for the defendant Unions would be appropriate.

An appropriate order may be submitted.