**Al ORPHAN et al., Plaintiffs-Appellants,**

**v.**

**FURNCO CONSTRUCTION CORPORA-
TION, Defendant-Appellee.**

**No. 71–1455.**

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1972.

Decided Aug. 17, 1972.

Charles J. Barnhill, Jr., Chicago, Ill., for plaintiffs-appellants.

R. Theodore Clark, Jr., Joel H. Kaplan, Chicago, Ill., for defendant-appellee, Furnco Construction Corp.; Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and CUMMINGS, and HAMLEY,[1] Circuit Judges.

CUMMINGS, Circuit Judge.

In this class action, plaintiffs sought damages resulting from defendant's alleged breach of the collective bargaining

1. Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

contract between it and the Union.[2] Jurisdiction was asserted under Section 301(a) of the Taft-Hartley Act (29 U.S.C. § 185(a)). Commencing in June 1969, defendant, a bricklaying and masonry contractor, employed plaintiffs to do construction work at a Chicago plant of the United States Steel Corporation. Plaintiffs principally claim that in violation of the collective bargaining contract between their Union and defendant, they were deprived of overtime pay, underpaid during straight time, discriminated against in hiring, and deprived of work on certain days.

In four counts of the amended complaint,[3] plaintiffs advance variant theories for their ability to maintain a court action despite the existence of a contractual grievance-arbitration remedy which has not been utilized. In Count I, plaintiffs assert that they "presented the grievances enumerated herein to the Union in every possible manner in an attempt to have the Union process them through arbitration * * * ." Count II contains the allegation that the " 'Disputes' clause mandatorily requires the Union to process to settlement or arbitration any grievance," but the Union "failed to process the grievances in violation of its contractual duty and said violation was in breach of its statutory duty of fair representation." In Count III, plaintiffs allege that "[t]he 'Disputes' clause * * * was not meant to be nor does it purport to be the exclusive remedy, or one that must first be exhausted, before an employee may pursue other means of redress," so that "resort to this Court irrespective of whether or not grievance procedures were otherwise pursued is permissible." Count IV alleges that "the defendant and the Union arranged and conspired to illegally ignore the Joint Agreement" and that "this collusion constituted a breach of the Union's statutory duty of fair representation."

The district court granted the defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted,[4] and filed a memorandum opinion reported at 325 F.Supp. 1220. The court held that the disputes clause in the collective bargaining contract[5] provided the exclusive remedy for redress of employee grievances and that the plaintiffs' failure to file timely and proper grievances with the Union in accordance with the Union's by-laws clearly barred their suit. Similarly fatal, the court ruled, was plaintiffs' failure to allege exhaustion of intra-Union remedies. The court further decided that plaintiffs' allegations of breach of the Union's duty of fair representation were facially unsupportable because "a Union does not breach its duty of fair representation by failing to process untimely and improperly filed grievances" and were insufficient because conclusory. Finally, the court ruled that the Union was not mandatorily required to process grievances but had both the power and responsibility to

2. United Order of American Bricklayers and Stone Masons Union Number 21.

3. In Count V, plaintiffs allege their entitlement to exemplary and punitive damages by reason of the defendant's "intentional and willful acts made with the full knowledge * * * that such conduct was wrongful and in wanton disregard of the rights of plaintiffs under the terms of the collective bargaining agreement * * *,"

4. See Fed.R.Civ.P. 12(b)(6).

5. Article XIII is the disputes clause and provides as follows:
"In case a dispute shall arise between an Employer and the Union, the Union shall immediately take up the matter in dispute with the President or Secretary of the Association for adjustment. If the Union and the President or the Secretary of the Association are unable to settle the matter satisfactorily, then the dispute shall be referred at once to the Joint Arbitration Board for consideration and decision within 48 hours in the manner hereinafter provided."
The next Article contains a no-strike, no lock-out clause and also provides that decisions of the Joint Arbitration Board "shall be binding on both parties."

screen grievances. The proprieties of these rulings form the issues we must address to decide whether the amended complaint was correctly dismissed.

■ Where, as here, the collective bargaining agreement establishes grievance and arbitration procedures for the redress of employee grievances, it is settled that the employee must at least attempt to exhaust these procedures before resorting to a judicial remedy. Vaca v. Sipes, 386 U.S. 171, 184, 87 S. Ct. 903, 17 L.Ed.2d 842; Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580. There are exceptions to this rule. One such exception exists "[i]f a grievance and arbitration procedure is included in the contract, but the parties do not intend it to be an exclusive remedy * * *." Vaca v. Sipes, supra, 386 U.S. at 184, n. 9, 87 S.Ct. at 913. Another exception inheres in the situation where "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if * * * the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." Id. at 185, 87 S.Ct. at 914. Plaintiffs endeavor to bring their action within both these exceptions—the former through Count III of the amended complaint and the latter variously through Counts I, II and IV.

## EXCLUSIVITY OF THE CONTRACTUAL GRIEVANCE AND ARBITRATION PROCEDURES

Plaintiffs contend that the disputes clause [6] is non-exclusive because it does not mention the rights and privileges of individual employees. But, as in International Union of Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248 (decided May 30, 1972), "[t]here is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration." Just as such a disputes clause is construed to encompass "all of the questions on which the parties disagree," "[a]part from matters that the parties specifically exclude," United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, it is construed to establish the grievance and arbitration procedures as the exclusive mode of redress unless "the parties to the collective bargaining agreement expressly agree[d] that arbitration was not the exclusive remedy." Republic Steel Corp. v. Maddox, supra, 379 U.S. at 657–658, 85 S.Ct. at 619.

A contention similar to plaintiffs' was rejected in Belk v. Allied Aviation Services Co. of New Jersey, 315 F.2d 513 (2d Cir.), certiorari denied, Rogers v. Allied Aviation Service Co., 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 74 (1963),[7] where the court noted that "any collective agreement is intended to secure rights for individual employees," and held that "where the collective agreement provides for arbitration by the Union of the subject matter of the employee's suit, the employee must look to his union initially for the vindication of his rights." Id. at 515, 516. Likewise, in Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167 (5th Cir. 1971), where the disputes clause was in pari materia with the instant one, the court held individual employees bound to utilize the contractually specified vehicle for grievance resolution. "Where responsibility for processing disputes under a labor agreement is vested solely in the union, the employee must rely upon the union to exhaust contractual remedies in his behalf, and to enforce compliance with those remedies by the employer." Id. at 170.

■■ Accordingly, we hold the Article XIII disputes clause to be the exclusive mode of redress for contractual grievances, and we decline to follow a

---

6. See note 5 supra.

7. Cited with approval in Republic Steel Corp. v. Maddox, 379 U.S. 650, 659, 85 S.Ct. 614, 13 L.Ed.2d 580.

National Labor Relations Board trial examiner's arguably contrary characterization of this disputes clause.[8] That characterization is out of harmony with national labor policy. See Moore v. Sunbeam Corp., 459 F.2d 811, 817–818 (7th Cir. 1972). Count III of the amended complaint could therefore properly be stricken.

## NON-COMPLIANCE WITH INTERNAL UNION GRIEVANCE PROCEDURES AND FAILURE TO EXHAUST INTRA-UNION REMEDIES

When the employer submitted its motion to dismiss, it tendered to the court the Union's by-laws for consideration. Article IX, Section 10 of these by-laws provides:

> "GRIEVANCES. Any member who wishes the Union to process a grievance for him against an employer must present his grievance in writing to an Officer or District Manager of the Union within 10 days after the occurrence of the event about which he is complaining."

The employer argues here, as it argued below, that the allegations in the complaint conclusively show that the plaintiffs failed to comply with the requirements of this provision in grieving to their Union.[9] Not having filed proper or timely grievances as specified in the by-laws, the plaintiffs are said in effect to have failed to satisfy the exhaustion requirement and so are ill-postured to bring this suit. The employer concludes that any breach of the duty of fair representation on the part of the Union would be irrelevant because plaintiffs, having failed properly to initiate a grievance with the Union in the first place, could not have been "prevented from exhausting * * * [their] contractual remedies by the union's [later] wrongful refusal to process the grievance."[10] It is apparently this argument that the district court accepted in ruling that non-compliance with the by-laws' grievance-lodging requirements barred this suit. Plaintiffs assert that the employer has no standing to raise their non-compliance with the Union by-laws since it enjoys no privity of contract as to the by-laws and that even if the employer can raise this defense, the plaintiffs did file timely grievances.[11]

Assuming (but not deciding) that there was a lack of compliance with the by-laws, then the employer seeks to

8. See Furnco Construction Corporation and United Order of American Bricklayers and Stone Masons Union No. 21, NLRB Division of Trial Examiners, Case No. 13–CA–9560 (1970), at pp. 16–17. His interpretation ignored the *Belk* case, *supra*, and the rule of Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, that doubts must be resolved in favor of arbitrability and exclusivity. The trial examiner's construction of this collective bargaining contract is, of course, not binding on the courts. Celanese Corp. v. NLRB, 291 F.2d 224, 226 (7th Cir. 1961), certiorari denied, 368 U.S. 925, 82 S.Ct. 360, 7 L Ed.2d 189; National Labor Relations Board v. Hobart Bros. Co., 372 F.2d 203, 206 (6th Cir. 1967).

9. The amended complaint asserted that the first presentation to the Union of the alleged contract violations occurred on September 30, 1969, but the employer contends that since it was an oral presentation, it did not satisfy the "in writing" requirement of the by-laws. Written grievances were not presented until on or about November 16, 1969, and then only by three of the plaintiffs. The employer argues that the latter presentation was not in compliance with the by-laws because it involved a "group grievance" in contradistinction to the individual grievances supposedly contemplated by the by-laws and because, in any event, it was untimely as not coming within the required 10-day period, measured from the date of the oral presentation, by which date the "event about which" the grievances were concerned must have occurred.

10. Vaca v. Sipes, 386 U.S. at 185, 87 S. Ct. at 914.

11. Plaintiffs argue that since the alleged contractual violations were continuing, the November 16, 1969, filing was timely. Apparently plaintiffs do not subscribe to defendant's group-individual grievance distinction. See note 9, *supra*.

equate plaintiffs' non-compliance with the by-laws with the failure of an employee properly to lodge a grievance in accord with the strictures of a collective bargaining agreement in a régime where the individual employee has the right and duty to initiate contractual grievance procedures. In the latter situation, even though the Union might have wrongfully refused to carry the improperly filed grievance to higher stages of the grievance procedure, the employer would be able to foreclose the employee's court action with the defense of the employee's non-compliance. But the character of that defense is important. The employee "is bound by terms of that [collective bargaining] agreement which govern the manner in which contractual rights may be enforced." Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842. Thus the employer, a party to the collective agreement, may assert a contractual defense against the employee suing him for breach of contract.

■ The instant situation is not comparable. Here only the Union may invoke the grievance procedure provided in the disputes clause. If the Union wrongfully refuses to do so and the aggrieved employees sue the employer for breach of contract, the employer is left without a contractual defense based on the grievance procedure of the collective bargaining agreement. Non-compliance by the employees with Union by-laws' grievance filing requirements is not tantamount to the employees' failure properly to exhaust the remedies provided for in the collective agreement since the employer did not bargain for adherence to Union by-laws nor does it have any control over changes in their content. Moreover, if the Union had decided to waive plaintiffs' non-compliance with the by-law provisions, the employer could hardly have complained, whereas whether or not the Union excuses an employee's failure to observe the grievance procedure of the collective bargaining agreement is irrelevant to the employer's asserting that failure as a defense.

There is, of course, good reason not to allow the employee's failure to comply with technical filing requirements of the Union's by-laws to be erected into an absolute bar to suit as if it were the same as a defense based on non-compliance with the collective bargaining agreement. The employer simply tendered to the court a copy of the Union's by-laws and argued non-compliance. In reality it might never have occurred to the Union that plaintiffs had failed to comply with the grievance filing requisites. The Union might never have insisted on strict compliance or might simply have interpreted the requirements differently from the employer and found the plaintiffs to have fulfilled them. Furthermore, the actual reason the Union failed to act on the grievances might have been wholly extraneous to the procedural deficiency, even though the Union would have chosen to rely on it as a pretext.

All this does not mean that the employer may not raise the plaintiffs' failure to observe the by-law requirement as a defense. It is clearly entitled to raise that failure as a defense against the plaintiffs' charge that the Union breached its duty of fair representation, a charge the plaintiffs must prove before they can reach the merits of their breach of contract suit. Certainly the plaintiffs are entitled to no advantage in this regard, because they failed to join the Union as a defendant, suing only the employer. If the Union would be entitled to defend itself on the basis that the plaintiffs did not file timely and proper grievances so that it was not obligated to take them up, the employer should be able to advance that same counter to the plaintiffs' unfair representation claim.

The employer also argues that because the plaintiffs have failed to allege exhaustion of internal Union remedies provided for in the by-laws, they are barred from maintaining this action against it. Strictly speaking, the contractual defense of failure to exhaust intra-Union remedies is available only to the Union, which enjoys it by virtue of the contrac-

tual relationship between the member and his Union, a relationship governed by the Union constitution and application regulations. As then Judge Blackmun stated in Neal v. System Board of Adjustment, 348 F.2d 722, 726 (8th Cir. 1965), "Each plaintiff, by becoming a member of the Brotherhood, necessarily made himself a party to that obligation [first to exhaust 'all remedies by appeal or otherwise provided' in the union constitution] and established a contractual relationship with the union." In that case, summary judgment was upheld in favor of the Union based on the failure to exhaust intra-Union remedies defense, but it was affirmed in favor of the employer only because the plaintiffs also failed to exhaust the grievance procedure provided for in the collective bargaining agreement.[12]   Id. at 726–727.

The employer argues that failure to exhaust intra-Union remedies should also be available to it as a defense because that would facilitate the national labor policy in favor of arbitration. However, that policy would be furthered only if an intra-Union appeal procedure could result in a reversal of the Union's action in refusing to process a grievance and a concomitant timely filing or reinstating of the grievance according to the provisions of the collective bargaining agreement. Since this will not always be the case,[13] the employer's argument has not established whether any intra-Union only selective appeal. Here it is simply employer refers us, Article X of the Union remedy affords such relief. Moreover, the employer has shown us no formal appeal or other procedure provided by the Union constitution or by-laws which so certainly holds out the prospect of such relief that the plaintiffs could justifiably be expected to have recourse to it before filing suit.

The intra-Union remedy to which the ion's by-laws,[14] is not an appeal procedure to contest improper Union action and provide relief to members injured thereby. Rather, this article provides for criminal-type prosecutions against Union members and officers charged with specified offenses. If, after "trial" the accused is found "guilty" of an offense, he is "punished by fine, reprimand or suspension." This is not the explicit appeal procedure "definitely available" to Union members that existed in Neal (348 F.2d at 726).[15] Contrary to the situation in that case, it would appear unreasonable to expect the

---

12. To the same effect see Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir. 1968); Foy v. Norfolk & Western Ry., 377 F.2d 243, 245–246 (4th Cir.), certiorari denied, 389 U.S. 848, 88 S.Ct. 74, 19 L.Ed. 2d 117 (1967); Fingar v. Seaboard Air Line R.R., 277 F.2d 698, 700–701 (5th Cir. 1960); see also Gordon v. Thor Power Tool Co., 55 Ill.App.2d 389, 400, 205 N.E.2d 55 (1965).

The only cases cited by the employer in which it appears that summary judgment was granted in the employer's favor because the employee-plaintiff failed to exhaust intra-union appeal procedures are Harrington v. Chrysler Corp., 303 F. Supp. 495 (E.D.Mich.1969), and Imbrunnone v. Chrysler Corp., 336 F.Supp. 1223 (E.D.Mich.1971). Notably in Anderson v. Ford Motor Co., 319 F.Supp. 134 (E.D.Mich.1970), Harrington was cited in support of granting the union's motion for summary judgment for plaintiff's failure to exhaust intra-union remedies, but its holding was not mentioned as a reason to grant the employer's motion. And the precise basis of Imbrunnone's holding is not clear. In any event, see Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 902 (D.Maine, 1970), which recognizes the limitations on a rule that failure to exhaust intra-union appeal procedures is fatal to a Section 301 action against an employer.

13. See Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 902 (D.Maine 1970).

14. Joint Appendix pp. 135–138 referred to at Appellee's Brief, p. 21.

15. Cf. also Foy v. Norfolk & Western Ry., 377 F.2d 243, 246 (4th Cir.) certiorari denied, 389 U.S. 848, 88 S.Ct. 74, 19 L. Ed.2d 117 (1967); Fingar v. Seaboard Air Line R. R., 277 F.2d 698, 701 (5th Cir. 1960); Anderson v. Ford Motor Co., 319 F.Supp. 134, 136–137 (E.D.Mich. 1970); Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 902, n. 20 (D.Maine 1970); Harrington v. Chrysler Corp., 303 F.Supp. 495, 497 (E.D.Mich.1969).

plaintiffs to have first sought relief against the Union's failure to process the grievance through Article X or to have alleged such attempt. We note the plaintiffs' allegations of various and persistent attempts to have the Union reconsider its refusal to process the grievance and do not find any explicit formal appeal procedures which must be exhausted. Furthermore, contrary to several cases cited by the employer,[16] we find no constitution or by-law provision precluding resort to a judicial remedy until after internal remedies have been exhausted. Given this fact and the nature of the intra-Union "remedies" we are referred to, we seriously doubt that, if joined as a defendant, even the Union could defend itself in an unfair representation suit on a failure-to-exhaust-internal-remedies basis. Finally, plaintiffs alleged the futility of further resort to the Union, and in view of the persistent attempts at gaining reconsideration alleged, there is reason to believe any other attempts would be unavailing. The rule of exhaustion is clearly subject to the exception of futility. See, Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476, 489–490 (7th Cir.), certiorari denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Foy v. Norfolk & Western Ry., 377 F.2d 243, 246 (4th Cir.), certiorari denied, 389 U.S. 848, 88 S.Ct. 74, 19 L. Ed.2d 117 (1967).

For the foregoing reasons, we think it was inappropriate for the lower court to rule that plaintiffs' failure to allege exhaustion of supposed intra-Union remedies was fatal to their complaint against the employer.

## BREACH OF THE UNION'S DUTY OF FAIR REPRESENTATION

Plaintiffs alleged in Count II of their amended complaint that the disputes clause [17] mandatorily requires the Union to process any grievance to settlement or arbitration, so that by failing to process their grievances, the Union breached its contractual duty and *ipso facto* its statutory duty of fair representation. The district court ruled to the contrary, finding the Union clearly possessed the power to screen grievances. In this we think the court was correct, and, therefore, Count II fails to state a claim warranting relief.

As the employer observes, "[t]he Disputes clause applies only 'in case a dispute shall arise between an Employer and the Union * * * [and] whether a dispute exists is a matter for the Union to decide.'" This Court only recently had occasion succinctly to summarize the law with the following statement fully applicable to this case:

> "The Supreme Court held in *Vaca* that a union has no mandatory obligation to submit every employee claim to arbitration. 386 U.S. at 191–192, 87 S. Ct. 903. A labor contract must be construed in its totality * * *. [P]art of the consideration for management's agreeing to the entire contract package was that it could rely on the union to screen grievances and demand arbitration only on those which the union in good faith thought meritorious.

> *         *         *         *         *         *

> "The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation, but that opinion also makes it clear that the union may exercise discretion in deciding whether a grievance warrants arbitration. Even if an employee claim has merit, a union may properly reject it unless its action is arbitrary or taken in bad faith. 386 U.S. at 193, 87 S.Ct. 903." Moore v. Sunbeam Corp., 459 F.2d 811, 819–820 (7th Cir. 1972).[18]

---

16. *E. g.*, Neal v. System Board of Adjustment, 348 F.2d 722, 726 (8th Cir. 1965); Fingar v. Seaboard Air Line R. R., 277 F.2d 698, 701 (5th Cir. 1960); Anderson v. Ford Motor Co., 319 F.Supp. 134, 137 (E.D.Mich.1970).

17. See note 5 *supra*.

18. See also Local Union No. 12405, etc. v. Martin Marietta Corp., 328 F.2d 945, 948 (7th Cir. 1964); Black-Clawson Co., Inc. v. IAM Lodge 355, 313 F.2d 179 (2d Cir.

■ The district court ruled that plaintiffs' claim that the Union breached its duty of fair representation was unsustainable because "a Union does not breach its duty of fair representation by failing to process untimely and improperly filed grievances." While in the abstract the quoted proposition is true, the district court was not justified in summarily concluding that no breach of the Union's duty had actually occurred, thus vitiating the complaint. The mere existence of by-law requirements which the employer argues were not fulfilled does not, without more, mean no breach of the duty of fair representation can be established. Even if we treat the employer's motion to dismiss the complaint as converted into one for summary judgment under Fed.R.Civ.P. 12(b), the district court's ruling cannot stand. Earlier we adverted to the real possibility that the actual reasons behind the Union's failure to process plaintiffs' grievances could be wholly extraneous to any procedural deficiency. Whether the asserted failure is pretextual or the real cause for the Union's refusal to act presents pre-eminently a question of fact. It must be remembered that whether or not, in the court's judgment, the plaintiffs complied with the filing requisites of Article IX is not the issue. The issues are whether or not the Union relied on non-compliance; if so, whether it did so in good faith and non-discriminatorily; and if not, whether it nonetheless refused to prosecute the grievances in good faith and non-arbitrarily. If the amended complaint's allegations of unfair representation are otherwise sufficient, the plaintiffs are entitled to an adjudication of those issues.

The dismissal of surviving Counts I and IV of the amended complaint thus hangs on the tenuous thread that the allegations of the Union's breach of its fair representation duty are insufficient because "conclusory." This filament is too flimsy to support the weight of dismissal here.

■ In their amended complaint plaintiffs detailed the persistent efforts they undertook to persuade the Union to prosecute their grievances and charged that the Union's refusal to act was "arbitrary and in bad faith." They alleged a meeting of Union officials without plaintiffs' consent or participation where it was decided not to process plaintiffs' grievances, and that this decision was "based upon hostility of the Union and its representatives toward the plaintiffs." Plaintiffs also alleged that the employer and the Union "arranged and conspired to illegally ignore the Joint Agreement" and that "this collusion constituted a breach of the Union's statutory duty of fair representation." Using the Supreme Court's words in Czosek v. O'Mara, 397 U.S. 25, 27, 90 S. Ct. 770, 772, 25 L.Ed.2d 21 "[a]lthough the complaint was not as specific with regard to union discrimination as might have been desirable, we deem the complaint against the union sufficient to survive a motion to dismiss."[19]

■ We are cognizant of cases cited to us by the employer wherein apparently a more rigorous view of unfair representation allegations was taken.[20] However, we agree with the Second Circuit that "[p]articularly in suits of this kind, where the courts are called upon to fulfill their role as the primary guardi-

1962), (cited with approval in Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, n. 7, 85 S.Ct. 614, 13 L.Ed.2d 580); Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601, 625–638 (1956).

19. See also Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80; Waters v. Wisconsin Steel Works etc., 427 F.2d 476, 489–490 (7th Cir.), certiorari denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

20. See, e. g., Stagley v. Illinois Central R.R., 397 F.2d 546, 552 (7th Cir. 1968); Lusk v. Eastern Products Corp., 427 F. 2d 705 (4th Cir. 1970). In view of Czosek, a more liberal attitude must now be taken as to pleadings of this nature. See Waters v. Wisconsin Steel Works etc., 427 F.2d 476, 489–490 (7th Cir.), certiorari denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

ans of the duty of fair representation, complaints should be construed whenever possible to avoid dismissals based on technical deficiencies in the specificity of the allegations." O'Mara v. Erie Lackawanna R.R., 407 F.2d 674, 679 (2d Cir. 1969).[21] This is the view the Supreme Court has accepted. Czosek v. O'Mara, *supra*, 397 U.S. at 27, 90 S.Ct. 770, affirming O'Mara v. Erie Lackawanna R.R., *supra*. As long as the complaint gives the defendant fair notice of the ground of plaintiffs' claim and it cannot be said with certainty that proof of any state of facts in support thereof would entitle the plaintiffs to no relief, it should not be dismissed for insufficiency. O'Mara v. Erie Lackawanna R.R., *supra*, 407 F.2d at 679; 2A Moore's Federal Practice, ¶ 1208, at 2271–2285 (2d ed. 1968). To the extent that failure to explicate more precisely wherein lies the alleged breach of the Union's duty of fair representation may prejudice the defendant, the available pretrial and discovery devices offer sufficient protection. And the employer's interest in preserving the vitality of grievance-arbitration machinery established in the collective bargaining agreement as the exclusive means for redress of employee grievances will receive the protection it deserves so long as the plaintiffs must first prove their claim of unfair representation before the employer is obligated to defend their breach of contract suit on the merits. Additional protection in the form of more rigorous pleading requirements than obtain generally under the Federal Rules of Civil Procedure is unjustified.

Therefore, aside from Counts II and III of the amended complaint, which were insufficient, the district court's judgment dismissing the amended complaint for failure to state a claim upon which relief can be granted is reversed and the cause is remanded.

---

21. This Court is no less called upon to enforce the duty of fair representation where plaintiffs here have not chosen to sue their Union for damages caused by their alleged breach of that duty. The plaintiffs' principal alleged injury was caused by the employer's supposed breach of the collective bargaining agreement, but without enforcement of the Union's fair representation responsibility, plaintiffs cannot secure redress. See Vaca v. Sipes, 386 U.S. at 187–188, 193, 87 S.Ct. 903, 17 L.Ed.2d 842.